MOORE & PORTER, Defendants in Error, *vs.* THE PERPETUAL
INSURANCE Co., Plaintiff in Error.

1. The risks enumerated in the printed part of an open policy of insurance may be
   restricted or enlarged by the written endorsement of the particular shipment lost.
2. A memorandum, attached to the endorsement of a shipment of negroes, stated that
   they were only insured against the dangers incident to navigation, such as blow-
   ing up, drowning, &c.
*Held.*—This will cover a loss of a negro by drowning during the voyage, without any
   disaster happening to the boat, or any unusual occurrence causing him to fall
   overboard.

*Error to St. Louis Court of Common Pleas.*

*J. A. Kasson,* for plaintiff in error, insists that the under-
writer "is only liable when the *damage* sustained is, in itself,
of an *extraordinary nature,* and has been caused by the
*direct and violent operation* of one of the perils insured
against." 2 Arnold on Ins. 756.

Unless the degree of a peril and its effect be both extraordi-
nary, the assured has no claim for indemnity. 1 Phill. on Ins.
245, (ed. 1823,) 625, (ed. 1840.) *Thompson* v. ——,
3 Taunt. 227. *Coles* v. *Marine Insurance Co.,* 3 Wash. C.
C. R. 159.

The ordinary hazards of a voyage, such as take place in the
quiet, undisturbed and usual progress of it, are not within the
perils taken by the underwriters. These are subject to the con-
tract between the shipper and the owner. Extraordinary perils
are taken by the underwriter; usual and ordinary by the car-
rier, except when they arise from the inherent character of the
subject of insurance, in which case the peril rests with the
owner. *Dale* v. *Hall,* 1 Wils. 281. *Hunter* v. *Potts,* 4
Campb. 203. *Rohl* v. *Pan,* 1 Esp. 444. 1 Phill. on Ins.
635–7, (ed. 1840.) *Boyd* v. *Dubois,* 3 Campb. 133.
Smith's Mercantile Law, 214, 215, and cases cited.

The language of the policy does not enlarge the scope of the
perils insured against. If it varies from the preceding terms
of the contract in any respect, it restricts them. Why use the
word "only," unless to restrict the scope of previous perils.

These perils are *ejusdem generis* with those in the body of the policy. *Phillips* v. *Barber*, 5 Barn. & Ald. 161.

*Geyer & Dayton,* and *John C. Richardson,* for defendant in error.

The endorsements on the policy are such an interpretation of the terms of the policy, in respect to perils, as shows that the peril by which the loss in question happened, was included, even though those terms, without the endorsement, would not include it.

The peril was one against which a prudent owner of such property would seek protection. The carrier would not be responsible for a loss occurring from it. *Boyce* v. *Anderson,* 2 Peter's Rep. 150. The owner must, therefore, look to some other source for protection and indemnity.

The particular endorsement, under which this claim arises, states, that the *negroes are only insured against the dangers incident to navigation, such as blowing up, drowning,* &c. These terms are broader than those ordinarily *expressed* in policies, and, certainly, are such as would lead the plaintiffs to suppose they had indemnity against just such a loss as that which occurred, and this, we claim, is the fair interpretation.

Suppose the negro had been blown up by the bursting of a boiler, would there be any doubts of the liability of the underwriters ? This court has already decided that the bursting of a boiler is a peril of the river, and its consequences to the boat and cargo must be borne by the insurers. *Citizens' Insurance Co.* v. *Glasgow et al.* 9 Mo. Rep. 411. Yet, the bursting of a boiler is rarely induced by external violence or injury to the boat.

But the language of the endorsement in question removes doubt on this subject, if any would exist, without such language. It clearly places a loss by drowning, upon the same footing with one by blowing up, and in neither case requires any previous disaster to the boat.

Other endorsements in the policy show what risks were intended to be covered. Negroes are " not to be manacled or

handcuffed, so as to prevent them from swimming. " Nor are they insured against " death by ordinary sickness, nor against leaving the services of the assured, " but " are only insured against the dangers incident to navigation, drowning, blowing up, " &c.

If the boat had sunk by a peril of the river, and the negro had thus been drowned, no question could have been seriously made of the liability of the underwriters, even independent of the peculiar language of the endorsement. To give any effect to this peculiarity, it must be construed as intended to embrace other risks than those covered by the printed terms of the policy, or as an interpretation of those terms, such as we contend for.

This case has been likened, by the opposing counsel, to one of goods being accidentally tumbled overboard and lost; but the cases are not alike. In one, the carrier is in fault and is responsible; in the other, he is neither. Slaves must be permitted to move about, and may fall overboard without the fault of the carrier, and in such case he is not liable.

GAMBLE, Judge, delivered the opinion of the court.

This is an action upon an open policy, to recover the value of a slave, who fell overboard and was drowned, during the voyage, without any disaster happening to the boat, or any unusual occurrence causing him to fall overboard. The policy covered such shipments as might be endorsed upon it.

There were several shipments of negroes and horses endorsed upon the policy, the first of which had this memorandum attached to it : " The horses and negroes entered above, are only insured against the dangers incident to navigation, drowning, blowing up, &c., but not against leaving the service of the assured, nor against death by ordinary sickness ; they are not to be manacled or handcuffed, so as to prevent them from swimming. "

1. The endorsement of negroes, including the one lost, has this memorandum attached to it : " The said negroes only insured against the dangers incident to navigation, *such as blowing up, drowning*, " &c.

The point assumed for the defence of the Insurance Company, and for which many authorities are cited, does not appear to arise in this case. The law which the counsel states, may be entirely correct, but it is not thought to be applicable to the claim now asserted by the plaintiffs ; nor is it doubted but that the printed part of the policy in which the risks, assumed by the company, are enumerated, may be modified by the written endorsement, covering other risks, or relieving the company from some which would otherwise be embraced within the printed enumeration.

2. We must examine this memorandum, as intended to express the real scope of the obligation of the company, and while it professes to declare, that the company do not insure the property against any but the dangers incident to navigation, such as blowing up, drowning, &c., we must, at least, understand it as declaring, that the company is bound for the losses happening by blowing up and drowning. We take it to be an engagement to indemnify the owner of the slave, against a loss of his property, which may happen by the blowing up of the boat or the drowning of the slave. In other words, the company, in specifying the dangers incident to navigation, against which they insure, have included, "drowning," which is, in itself, not a "danger," but the result of a peril, and against that result they insure. We are not left to inquire what are perils of the river, or dangers incident to navigation, or whether the loss happened by an ordinary or extraordinary cause. The company has agreed that drowning, happen as it may, is a loss for which the assured shall be indemnified.

The judgment in this case must be affirmed.