Pugh v. Ayres.

CORTEZ v. PUGH, Plaintiff in Error, v. THOMAS J. AYRES, Defendant in Error.

St. Louis Court of Appeals, January 19, 1892.

1. **Evidence:** CLERK'S INDORSEMENT OF FILE-MARK ON PAPERS. The indorsement made by the clerk on a bill of exceptions, of the fact and date of the filing of the paper is competent evidence of those matters.

2. ———: PREJUDICIAL ERROR IN THE ADMISSION OF INSUFFICIENT EVIDENCE. The admission of testimony which does not tend to establish an alleged oral agreement, varying a prior agreement in writing which is sued upon, but still tends to lead the minds of the jurors to the conclusion that the rights of the parties are not to be governed by the written contract, is manifest error.

3. ———: IMPRESSIONS OF A WITNESS. Testimony by a witness in regard to his impressions is not competent evidence, unless it appears that what he terms his impression is really a recollection.

4. **Witnesses, Examination of:** WAIVER OF OBJECTION. An objection to the admission of incompetent testimony is not waived by the cross-examination of the witness in regard to matter objected to.

*Error to the Pike Circuit Court.*—HON. E. M. HUGHES,
Judge.

REVERSED AND REMANDED (*with directions*).

*John Farrell*, for plaintiff in error.

*A. W. Stewart, E. W. Major* and *J. D. Hostetter,*
for defendant in error.

THOMPSON, J.—In this case the bill of exceptions
was filed in vacation, in pursuance of an order of the
court made in term time; and it is challenged by the
defendant in error on the ground that the transcript
fails to show any file-mark of the clerk, or other
authentic evidence of its having been filed within the
time prescribed by the order of the court. We have
sent our *certiorari* to the clerk, and he has returned,
in obedience thereto, a certified copy of his file-mark
on the bill of exceptions (omitted in the transcript),
from which it appears that it was filed in time and that
the filing was properly evidenced. That the indorse-
ment of the clerk on the bill of exceptions of the fact
and date of its filing, when it is filed in vacation, is the
proper evidence of such fact and date of filing has been
frequently decided by the supreme court. *Carter v.
Prior*, 78 Mo. 222; *Campbell v. Railroad*, 78 Mo. 639.
This is, therefore, a good bill of exceptions, and we
accordingly proceed to consider the merits of the
case.

The action is replevin for a promissory note. There
was a trial before a jury, and a verdict and judgment
for the defendant, to reverse which the plaintiff pros-
ecutes this writ of error.

The evidence adduced at the trial tended to show
that the plaintiff had invented a device consisting of a
spring for holding buggy tops, and had applied for a
patent therefor; that, at the time of the transaction

about to be detailed, a patent had not been issued to him, but that he had been informed that it would be issued ; that, on the faith of its being so issued, he sold to two persons, Williamson and Mitchell, the right to vend the said patent in the states of Ohio and Indiana for the sum of $350, $25 of it being paid down as earnest money ; that the contract of sale was reduced to writing, but that the writing had been lost and could not be produced at the trial.    Oral testimony was given by both parties of the terms of this contract, from which it appeared that the substance of it was that, when the plaintiff received the patent for his invention, he would make to Williamson and Mitchell a deed for the territory named, whereupon they were to pay him the balance of the purchase price.    The evidence adduced by both parties shows that no time was named in the contract, within which the plaintiff should thus make to Williamson and Mitchell the deed.    The evidence also tended to show that, some time after this written contract had been executed and delivered, Williamson and Mitchell executed the promissory note, which is the subject of this action of replevin and delivered it to the defendant Ayres, in escrow, to be by him delivered to the plaintiff, when the plaintiff should get his patent and tender his deed to Williamson and Mitchell in pursuance of the terms of the written contract.

The note bears date March 4, 1889.    On June 4, of the same year letters patent were issued from the United States patent office to the plaintiff for the invention named.    Immediately after receiving these letters patent he made out a deed, conveying the territory named to Williamson and Mitchell, and tendered the deed to the defendant Ayres.    The defendant, nevertheless, declined to deliver the note to plaintiff, because he had received a letter from Williamson instructing him not to do so.

On this state of evidence the plaintiff was clearly entitled to judgment, unless there was evidence tending

to make out the hypothesis upon which the action was defended. That hypothesis seems to have been that, subsequently to the written contract, there had been a parol contract, by which the deed for the territory purchased by Williamson and Mitchell of the plaintiff was to be made out and delivered to them within thirty days; and that the note, which is the subject of the controversy, and which was payable thirty days from its date, was made out and delivered in escrow to the defendant, not in pursuance of the original written contract, but in pursuance of this supplemental parol agreement. Was there any substantial evidence tending to show such a supplemental parol agreement? Taking all the defendant's evidence on this subject, including that which was admitted over the plaintiff's objections, and it was as follows:

Mr. Williamson testified: "The agreement was that we were to pay the balance in cash as soon he (meaning the plaintiff Pugh) procured the patent. * * * We waited for the patent from the twelfth day of February to the fourth day of March, and then got tired of waiting, and executed this note for balance, payable in thirty days. We expected the patent within thirty days—that was the object of giving a thirty-day note. * * * We wanted to work this patent in connection with another patent; and, as we did not get it in time to do so, it would not pay us to go over the territory a second time. We waited two or three weeks, and could not wait any longer, and so told Pugh; but we would still take the deed if he would make it in thirty days, and we would give him a thirty-day note for balance. The note was not made out until two or three weeks after the written contract, as we had the cash to pay when the deed was delivered to us, which was our first intention to do. * * * We had visited several places in Indiana and Ohio before we were informed that Pugh had received his patent.

VOL. 47—38

We had been to Indianapolis, Muncie, Dayton, Washington Court House, and two or three small places. I cannot say there was a time specified in the written contract when Pugh was to deliver the deed. We intended to make contracts if we could sell territory for this patent, and deliver the deed afterwards. That was the object of the thirty-day note, should the deed have been made before we had the cash, as the trade was first for cash. We were informed in St. Louis, on our way to Indiana, that we could not sell the territory until the patent had been issued to Pugh. A patent lawyer told me this. I don't remember his name. I don't think the written contract mentioned any certain time. The time was short."

Mr. Mitchell also testified as follows: "We waited here some time after we made the bargain with Pugh. We wanted to get the deed so we could work Indiana and Ohio with both patents at the same time. We could not afford to go over the territory with the Pugh patent alone. * * * We were to get the deed in thirty days from time we left note with Ayres, so we could handle this patent before we got through in Ohio and Indiana. We had got about through with Indiana before we were informed that the deed had been made and tendered to Ayres. The written contract did not specify that the deed was to be delivered in thirty days. All the contract said, as well as I remember, was that the deed should be delivered as soon as soon as Pugh got his patent. We found out that, under the laws of Indiana, we could not handle this patent till letters patent had been issued by the patent office. On this account we did not try to sell territory. We had blanks printed for this purpose, but did not use them. We got this information, about not being able to handle patents till issue of letters, from a patent lawyer in St. Louis. I don't remember his name or the number of his office. I don't remember what street it was on."

The defendant Ayres also testified: "The note was left with me to be delivered to Pugh when he got patent and made deed to Williamson and Mitchell. I got an impression that this was to be done in thirty days. I afterwards received a letter from Williamson telling me not to deliver the note ; and, when Pugh offered me the deed, I told him I could not deliver the note. * * * I don't know how I got the impression that the deed was to be delivered in thirty days. I may have got it from conversation with some of the parties—I don't know from whom—or from the fact that the note was made payable thirty days after date. I don't know who suggested that the note be payable thirty days after date. I may have suggested it myself. I have no recollection as to how it came to be done."

This evidence, taken together, shows that no time was fixed in the original written agreement for the delivery of the deed by the plaintiff, and for the payment of the purchase money by Williamson and Mitchell, or for the delivery of the note to the plaintiff by the defendant Ayres. And, as we interpret it, it falls short of showing any distinct subsequent parol agreement between Williamson and Mitchell on the one side, and the plaintiff on the other, limiting the time for the delivery of the deed to thirty days from the date of such parol agreement or from the date of the giving of the note,—much less an agreement founded on a consideration. It merely shows what the understanding and expectation of Williamson and Mitchell were. But the understanding and expectation of one party does not make a contract.

We must also conclude that the court erred in giving the following instruction to the jury at the request of the defendant, for the reason that the evidence afforded no hypothesis of the facts therein recited : "The court instructs the jury that, if they believe from the evidence in the cause that there was a written

contract by and between plaintiff and Mitchell and Williamson, that plaintiff was to furnish the deed to the two states of Indiana and Ohio for his patent buggy-top spring before the maturity of the note in controversy, and that the plaintiff failed to so furnish said deed within such time, then your verdict must be for the defendant."

We must also conclude that the court erred, for the same reason, in giving the following instruction at the request of the defendant : "The court instructs the jury that, although they may believe from the evidence in the cause that the written contract between the plaintiff and Williamson and Mitchell contained no reference to the note in controversy, nor as to who should hold same, nor as to the time within which said note was to be delivered when such patent deed should be delivered by plaintiff, still, if you find from the evidence that the parties, after the execution of said written contract, agreed, or had an understanding with each other, that said note was to be held by defendant, and that defendant should deliver up said note to plaintiff, provided plaintiff should furnish said patent deed before the maturity of such note, and that plaintiff failed to furnish said deed within said time, then your verdict must be for the defendant."

It is equally clear that the plaintiff made out his case by uncontroverted evidence—even by the evidence adduced by the defendant—and that the verdict of the jury was contrary to all the substantial evidence in the case, and contrary to the first instruction given by the court at the request of the plaintiff, which proceeded upon the plaintiff's hypothesis of the rights of the parties being governed by the written contract.

We make the following further observation upon the record with reference to errors which have been assigned in respect of the ruling of the court upon the admission of evidence. It was competent under the rules of evidence for the defendant to prove that the

original written contract had been varied by a subsequent parol agreement between the parties thereto. *Brown v. Brown*, 90 Mo. 184. But the admission of evidence which does not tend to show the making of such a subsequent parol agreement, but which does tend to lead the minds of the jurors to the conclusion that the rights of the parties are not to be governed by the original written contract is manifest error. Such an error, we think, is to be ascribed to the ruling of the trial court in allowing Mr. Williamson to testify against the objection of the plaintiff, as follows: "We waited for the patent from the twelfth day of February to the fourth day of March, and then got tired of waiting, and executed this note for the balance, payable in thirty days. We expected the patent within thirty days— that was the object of giving a thirty-day note." This evidence merely shows what the object, motive and expectation of Williamson and Mitchell were at the time when they gave the note, and the reason which induced *them* to give the note; but it does not tend to show an agreement between them and the plaintiff varying the terms of the previous written contract, and it was hence inadmissible under the rules of evidence.

The same error may be predicated of the ruling of the trial court in admitting the following testimony of the same witness against the plaintiff's objection, properly made: "We wanted to work this patent in connection with another patent which we had, and, as we did not get it in time to do so, it would not pay us to go over the territory a second time. We waited two or three weeks, and could not wait any longer, and so told Pugh; but we would still take the deed if he would make it in thirty days, and we would give him a thirty-day note for balance. The note was not made until two or three weeks after the written contract, as we had the cash to pay when the deed was delivered to us, which was our first intention to do." In order to value this testimony properly, it must be kept in mind that the

testimony of both parties shows that Williamson and Mitchell had, by the written contract, bound themselves to take the deed without reference to the time when it should be delivered, except that it should be delivered as soon as the plaintiff obtained his patent from the patent office. This testimony fails to show any agreement on the part of the plaintiff, much less any agreement founded on a new consideration, shortening the time for the delivery of the deed to Williamson and Mitchell. It, therefore, did not tend to show a new parol engagement, and was hence inadmissible under the rules of evidence, for the reason stated with reference to the evidence detailed in the preceding paragraph.

The same observation may be made, without repeating the reason, upon the following testimony of Mr. Mitchell, admitted by the court over the objection of the plaintiff: "We waited here some time after we made the bargain with Pugh. We wanted to get the deed, so we could work Indiana and Ohio with both patents at the same time. We could not afford to go over the territory with the Pugh patent alone."

The defendant being sworn testified as follows: "The note was left with me to be delivered to Pugh when he got the patent and made the deed to Williamson and Mitchell. I got an impression that this was to be done in thirty days." The plaintiff objected to the witness stating his impressions as to the deed having to be made in thirty days, because such testimony was incompetent and irrelevant, and because the witness should only be permitted to state facts. This objection was overruled and the plaintiff excepted. This was error. The impressions of a witness are not evidence, unless it appears that what the witness calls his impression is really a recollection. *Clark v. Bigelow*, 16 Mo. 246; *Boyd v. Bank*, 25 Iowa, 255; *Real v. People*, 42 N. Y. 270; *Carter v. Connell*, 1 Whart. (Pa.) 392; *Sisson v. Conger*, 1 Thomp. & C. (N. Y.) 564. In this case the

error was more apparent from the fact, that the cross-examination of the defendant showed that he could not tell from what source he derived the impression. Nor did the plaintiff, by cross-examining the witness as to the source from which he derived the impression, after the court had overruled his objection to the evidence, waive his objection.

As the plaintiff was entitled to recover the note from the uncontroverted evidence, the judgment will be reversed and the cause remanded, with directions to enter judgment for the plaintiff in conformity with the statute. If the possession of the note has been delivered to the plaintiff, and if he is still in possession of it, the judgment should be that he have possession of it, and recover of the defendant one cent damages. But if the note is in the possession of the defendant the judgment should be in the alternative for its possession or its value, and also one cent damages for its detention.

It is so ordered. All the judges concur.