JOSEPH STEINBERG, Respondent, v. THE PHŒNIX INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant.

St. Louis Court of Appeals, April 5, 1892.

1. **Evidence**: CLERK'S INDORSEMENT OF FILE MARK ON PAPERS. The indorsement, made by the clerk on a bill of exceptions, of the fact and date of the filing of the paper is competent evidence of those matters.

2. **Reformation of Contract**: MISTAKE OF ONE PARTY ONLY. To entitle a party to the reformation of a contract for mistake, the mistake must be mutual; mistake on the part of the complainant alone will not suffice. And *held*, further, in the course of discussion, that the mistake must be established by evidence which will strike the mind of the chancellor as free from reasonable doubt.

3. ———: LACHES. It is the duty of the insured to examine a policy insuring him against loss by fire, and see whether it contains the contract bargained for, and the retention of the policy without complaint until after loss, and for 'an unreasonable time—over four months in this case—debars the right of reformation.

4. **Recovery on Theory Inconsistent with the Pleadings.** A plaintiff cannot recover upon a theory of the case adverse to that upon which his petition proceeds.

*Appeal from the Lincoln Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED.

*G. W. Barnett,* for appellant

(1) This being a suit in equity the appellate court is not bound by the findings of the court below upon questions of fact, but will exercise a supervisory control over the lower courts in a case like this, and, if not fully satisfied with the conclusions of fact reached by the trial court, will reject them and make findings of its own. *McElroy v. Maxwell,* 101 Mo. 295; *Benne v. Schnecko,* 100 Mo. 250. (2) The evidence was not sufficient to authorize the findings and decree of the court, and the court, therefore, erred in rendering a decree for plaintiff. This is a suit in equity to reform an insurance policy, and before this can be done both the agreement and the mistake must be made out by the clearest evidence—such as will strike all minds as unquestionable and free from reasonable doubt. *Forrester v. Scoville,* 51 Mo. 268; *Tesson v. Ins. Co.,* 40 Mo. 33; *Atkins v. Henry,* 80 Mo. 157; *Fessenden v. Ockington,* 74 Me. 123; 1 Story's Equity Jurisprudence [11 Ed.] p. 161; *Meade v. Ins. Co.,* 64 N. Y. 454; *Hearne v. Ins. Co.,* 20 Wall. 488; Wood on Insurance [2 Ed.] pp. 1092, 1105; *Cooper v. Ins. Co.,* 50 Pa. St. 299; *Guernsey v. Ins. Co.,* 17 Minn. 104; *Ice Co. v. Ins. Co.,* 31 Barb. 72; *McHugh v. Ins. Co.,* 48 How. Pr. 230. If it were true that the agent Duncan made such a contract with plaintiff as is alleged in the petition, yet that would not be sufficient to bind the defendant, because such agent had no authority to

make a contract of insurance, but only to take applica tions, and while the agent, simply authorized to take applications; binds the company so far as relates to the application, he cannot make a contract of insurance. Before there can be a recovery in this case it must appear that some agent of the company authorized to accept and pass on the application, or authorized in some way to consummate the contract, agreed to the contract as alleged by plaintiff. *Guernsey v. Ins. Co.*, 17 Minn. 104; *Williams v. Edwards*, 94 Mo. 447; Wood on Insurance [2 Ed.] pp. 44, 46, 842; *Hamilton v. Ins. Co.*, 6 Biss. 9; *Neville v. Ins. Co.*, 19 Ohio, 452; *Moore v. Ins. Co.*, 72 Iowa, 414. '

*Martin, Avery & Young* and *R. H. Norton*, for respondent.

ROMBAUER, P. J.—This is a suit in equity. The plaintiff's petition prays for a reformation of a fire insurance policy, and for judgment upon the policy thus reformed. Upon the trial there was judgment in conformity with the prayer of the petition. The defendant, appealing, assigns for error that the judgment of reformation is not supported by the weight of the evidence, nor by any evidence, and that, in absence of reformation, the defendant was entitled to judgment upon the conceded facts.

A preliminary question arises as to the bill of exceptions. The plaintiff claims it forms no part of the record, and should be disregarded, and in support of his claim cites *Fulkerson v. Houts*, 55 Mo. 301; *Johnson v. Hodges*, 65 Mo. 589, and *Jones v. Christian*, 24 Mo. App. 540. The two cases first above cited had reference to the state of the law before its amendment in 1885, which first permitted the filling of bills of exceptions in vacation, and the last case is decided upon

their authority, although it is not clear whether the bill in controversy there was filed before or after the law of 1885 took effect. In the case at bar the bill of exceptions, according to plaintiff's statement, has the file mark of the circuit clerk indorsed thereon, showing that it was filed November 28, 1891, and within the sixty days granted by the court, and the transcript recites that it was filed on that day. This, under our recent ruling in *Pugh v. Ayers*, 47 Mo. App. 590, is sufficient to make the bill of exceptions part of the record.

The plaintiff's petition states, in substance, that the defendant issued to him its policy insuring him against loss by fire to the amount of $1,500, from July 1, 1890, to July 1, 1891; that this policy contained the clause, "$1,000 additional insurance, concurrent herewith, permitted elsewhere;" that, when the plaintiff made his application for this insurance, he had $2,500 other insurance on that property, covered by two policies, one for $1,500 and the other for $1,000; that it was then and there agreed between him and the local agent of the defendant that such other insurance should remain on the property until the expiration of the $1,000 policy, and that thereafter the plaintiff would carry insurance to the amount of $3,000 on the property, inclusive of the $1,500 carried by the defendant, but that the defendant, instead of issuing to him a policy in conformity with such agreement, issued to him one containing a clause above recited as to concurrent insurance; that plaintiff, being illiterate and unfamiliar with the English language, did not notice this discrepancy until after the happening of the loss.

The petition then prays for a reformation of the policy in conformity with the agreement, states the loss, the performance of conditions precedent on his part, and prays for judgment for $1,500.

The answer denies that there was any mutual mistake in the policy, and denies that the defendant ever made any other contract with the plaintiff than the one expressed in its policy. The answer further states that it was distinctly understood at, and prior to, the time when the defendant issued its policy, that the plaintiff would be permitted to carry only $1,000 other concurrent insurance on the property. The answer then claims that the defendant is not liable for the loss owing to the following facts:   That there is a clause contained in the policy to the effect that "this policy shall be void, if the assured now has or shall hereafter make any other insurance, whether valid or not, on said property or any part thereof, unless consent is indorsed by the company on said policy;" that, while the policy only permits $1,000 concurrent other insurance, the plaintiff carried from July 1, to August 13, 1890, $2,500 other concurrent insurance, and $1,500 of such insurance from the latter date until the date of the fire, and thereby rendered said policy wholly void at the time of the fire.

The answer was replied to, but touching the fact, that the plaintiff did carry concurrent insurance in excess of $1,000 during the entire time between July 1, 1890, and the date of the fire, there is no controversy.

The plaintiff's evidence tended to show the following facts:   He was a merchant, and began business in August, 1889.   He insured his merchandise at that date in the sum of $1,500, the policy expiring in August, 1890; and he took out, in November, 1889, $1,000 additional insurance, expiring in November, 1890.   It is customary to insure goods for one year, and the defendant's local agent, who was plaintiff's near neighbor, might be presumed to have known that the plaintiff was not likely to have any insurance on his merchandise

expiring in July, 1890. The defendant's local agent solicited the insurance from plaintiff, and wrote out the application on which it was based, on June 9, 1890. That part of the application which was to be signed, and which was signed by the plaintiff, stated, "present insurance, $2,500," but did not state at what time such insurance or any part thereof expired. The plaintiff, however, testified that, when he signed the application, he told the defendant's local agent what insurance he had, and exhibited to him the policy for $1,000, expiring in November, stating that he would have that policy canceled as soon as he saw the insurance agent who controlled it. On the first of July, 1890, defendant's agent came into plaintiff's store with the policy in suit, and handed it to him, saying it was all right.

The plaintiff further testified that he had requested the defendant's local agent to explain to the defendant the circumstances, and that, when he received the policy, as aforesaid, he thought it was all right; that he was illiterate and unfamiliar with the English language, and that the defendant's local agent knew this fact; and that he never learned of the $1,000 limitation as to concurrent insurance until after the fire, which occurred on November 24, 1890, four months and twenty-four days after the delivery of the policy. The plaintiff caused the cancellation of the $1,000 policy in July, 1890, soon after he received the policy in suit, and renewed the policy for $1,500, which expired in August of that year. The defendant's policy, by its terms, was to take effect July 1, 1890, so that there is no controversy touching the fact, that from that date until some time hereafter the plaintiff carried $2,500 other insurance, which was concurrent with the insurance mentioned in the defendant's policy, and that such concurrent insurance at no date between July 1, 1890,

and the date of the fire, was less than $1,500. This evidence and some additional evidence to the effect that the defendant's local agent knew, after the delivery of the policy, that plaintiff retained $1,500 additional insurance, constitute all the evidence of the plaintiff bearing on the question of reformation.

The defendant's local agent testified that, when he solicited the insurance from plaintiff, the latter told him that he had $2,500 insurance on the merchandise, $1,500 of which would expire in July, and would not be renewed. He denied that the policies were shown to him. He stated that, when he forwarded the plaintiff's application to the company for approval, he wrote on the back thereof, in the column for remarks of agents, the following statement: "Mr. Steinberg has two policies in German–American of New York; one for $1,500 expires July 1, and one for $1,000 that expires November, 1890."

This statement was shown upon the trial to have been indorsed on the original application (which is also produced before us for inspection). It is in the same handwriting and ink as the residue of the application, and the evidence admits of no reasonable doubt that it was upon the application when the defendant acted upon it in issuing the policy in suit. This fact is made more patent by the letter of defendant's agent to defendant, bearing date June 12, 1890, which the plaintiff offered in evidence, and which is as follows:

"SILEX, MO., 6–12, 1890.

"*Mr. H. M. Magill, General Agent.*

"DEAR SIR:—I have received the return application for more information.

"Attached is a diagram of lots in block B., town of Silex. You will see number 1 has frame one-story building. Numbers 2 and 3 are vacant; 4 and 5 are

one-story frame buildings; 6, 7 and 8, vacant; number 9 is the one Steinberg is in. The stock of goods is in frame one-story building, sixteen by sixty-six feet. There is a one-story frame building, sixteen by forty-eight, across west end of 10, 11 and 12. Stable on 13, and west of Steinberg's stock of goods about sixty feet.

" Another stable on lots 15 and 16, and seventy feet off. The building belongs to a widow lady, Mrs. Kimler, and Mr. Steinberg only rents.

" Mr. Steinberg is paying $2 per hundred for his insurance in the German–American of New York, but is expecting a less rate. He has two policies; one for $1,500 expires July 1, 1890, and he wants this one ready when that expires. Then he has one for $1,000, that expires some time in November next, and will want another $1,000, if everything is all right.

    · " Respectfully,

        "Thomas B. Duncan.".

The original application, which has been produced before us, shows the diagram referred to in this letter sketched in pencil on the reverse side thereof, and also shows a pencil mark across the figures $2,500 on the face of the application, and the figures $1,000 written over it in pencil, which changes were presumably made at the defendant's main office, after the application was sent to it the second time.

Touching the powers of the defendant's local agent to bind the defendant by any representations made, the plaintiff offered no evidence. It appeared by the plaintiff's own evidence, however, that he knew that his application would have to be forwarded to the defendant's main office for approval, and that the local agent could not even give him the rates of insurance. The defendant put in evidence the certificate of appointment of the local agent in question, the material part of which read as follows:

"CERTIFICATE OF APPOINTMENT.

"Branch for West and South of the Phœnix Insurance Company, Hartford, Connecticut.

"This is to certify that Thomas B. Duncan, of Silex, Lincoln county, and state of Missouri, is hereby duly considered and appointed surveyor of the Phœnix Insurance Company, of Hartford, Connecticut, during the pleasure of said company; and as such surveyor is duly authorized and empowered to receive proposals for insurance against loss or damage by fire, and to transact all business pertaining to said office, that shall be given him in charge by the general agent of said company at Cincinnati, Ohio."

It will be seen from the pleadings in this case that the plaintiff does not seek to recover on any theory of waiver or estoppel. Were such the fact his remedy would be at law, and not in equity. He could sue on the policy, and, if the defendant set up the concurrent insurance clause in defeasance of a right of recovery, he might avoid its effect by pleading in reply facts showing a waiver or estoppel. In that respect the case made by the pleadings herein is radically different from the case of *Hamilton v. Ins. Co.*, 94 Mo. 353, on which the plaintiff mainly relies, as that was an action at law in which a waiver was sought to be established. But this case is also radically different in the evidence from the other, because in the *Hamilton case* the agent, whose acts were relied on as constituting a waiver of a similar clause in a policy *previously* issued, was authorized to make contracts of insurance, and had himself effected the subsequent insurance, which was claimed to have worked an avoidance of the policy sued on; whereas here the agent is a mere soliciting agent, and whether he did or did not know of other existing insurance in excess of the permitted limit, is under the evidence reasonably doubtful. The plaintiff's right of

Steinberg v. The Phœnix Ins. Co.

reformation does not rest upon any theory of waiver, but upon a theory of mutual mistake. Before there can be a reformation of the policy, it must be established that both parties agreed to something different from what is expressed in the writing. The court cannot supply an agreement that was not made. *Tesson v. Ins. Co.*, 40 Mo. 33.

Now in the case at bar there is not a particle of evidence, that the contract made by the defendant is not the contract it intended to make. It is true that it was informed by the plaintiff's application that the insurance on the goods at the date of the application (June 8) was $2,500; but, since the application does not state at what time that insurance or any part thereof would expire, that statement is in no way opposed to the indorsement by the local agent on the reverse side of the application that $1,500 thereof would expire on the first day of July, when the defendant's policy would take effect, leaving only $1,000 insurance on the goods concurrent with that of defendant's insurance. The subsequent letter of June 12, written by the local agent and offered in evidence by the plaintiff himself, only corroborates that fact. Nor is there a particle of evidence in the case, that the contract of insurance was made with the local agent. All the testimony concedes that the local agent was not empowered to make any contract of insurance, and that the plaintiff was advised of the fact that his application would have to be submitted to the main office, and that the terms of the contract, including even the rate of insurance, would have to be determined there. Taking the most favorable view of the plaintiff's evidence standing alone, it makes out no mutual mistake, such as would entitle him to a reformation. It at best makes out a mistake on his own part, for which his remedy is rescission and not in reformation.

In view of the foregoing it is needless to discuss the weight of the evidence, because that is directed to an immaterial point, although it is well settled that, in order to establish a contract in equity, contrary to the written terms of an instrument, the mistake must be made out by evidence which will strike the mind of the chancellor as free from reasonable doubt. *Forrester v. Scoville,* 51 Mo. 268; *Atkinson v. Henry,* 80 Mo. 157. The evidence in this case does not answer that requirement, even were it directed to a material point, which it clearly is not.

Nor can we see how the fact that the local agent told the plaintiff, when he delivered the policy, that it was all right (which fact is asserted by the plaintiff, and denied by the local agent), even if it were true, affects the question under consideration one way or the other. It was held in *American Ins. Co. v. Neiberger,* 74 Mo. 167, that it was the duty of the assured to examine the policy, and see whether it contained the contract he bargained for, and, where he retained it without objection for three months and fifteen days, even his right of rescission or cancellation was gone. Much less could he insist, under similar circumstances, upon a reformation after loss.

As to any question of waiver or estoppel arising upon the evidence, it suffices to say that a plaintiff cannot recover upon a theory of the case adverse to that upon which his petition proceeds, even if his evidence under other circumstances might authorize recovery on the adverse theory. *Stix v. Matthews,* 75 Mo. 96. That of itself, regardless of the character of the plaintiff's evidence, would debar him of recovery on a theory of waiver in this proceeding.

All the judges concurring, the judgment is reversed.