AETNA LIFE INSURANCE COMPANY, Appellant, v. AMERICAN ZINC, LEAD & SMELTING Company, Respondent.

Springfield Court of Appeals, March 3, 1913.

1. **CONTRACTS OF INSURANCE: Construction of.** The construction to be placed upon contracts of insurance does not materially differ from the construction to be placed upon other contracts. Effect must be given, if possible, to all parts of the policy, written or printed. And this does not conflict with the principle that special written portions of an insurance policy prevail over the general printed portions; nor with the principle that where the contract is of a doubtful or ambiguous meaning, it will be construed most strongly against the insurer.

2. **INSURANCE CONTRACTS: Cancellation of by Insured: Higher Rate for Short Term.** An insurance policy provided indemnity against loss from bodily injuries and death suffered by employees of the assured, with a policy period of twelve months. The premium was based on the estimated amount of wages to be paid by the assured during the policy period, being a fixed per cent of that amount. In event that the estimated single premium exceeded that amount, the company should refund, and if the amount was found to be less than the estimated premium, the assured was to pay the additional amount. It contained a special provision as to time and manner of paying the premium under the head, "Monthly adjustment of premium, 50 dollar deposit," to the effect that on or before a certain day in each month the insured should give the insurer a written statement of the amount of wages earned by its employees during the preceding month and pay the company the premium earned on such wages at the rate named in the policy. *Held*, that the contract was for a year and the cancellation provision contained in the policy did not give the assured the right to cancel the policy in a shorter time without paying the higher rate provided for in the policy for short terms.

3. **CONTRACT OF INSURANCE: Reformation of: Court May Give Same Relief as if Reformed.** The answer of the defendant in an action on an insurance contract was that the written contract did not state the real agreement of the parties thereto and asked the trial court to reform the same. *Held*, that if the trial court should grant the relief, it need not in terms reform the policy contract but might give the defendant the same relief as it would if the contract stood reformed.

4. **CONTRACT OF INSURANCE: Reformation of: Burden and Kind of Proof.** In a proceeding to reform a written contract on the ground of mistake, the burden of proof rests on the party who asserts the mistake and he must establish its existence by clear and convincing evidence.

5. **REFORMATION OF CONTRACT: Alleged Mistake: Evidence.** Where it is claimed that the plaintiff company agreed to furnish, but did not, a new policy in its company which should contain the same provisions as were in a policy formerly held by the assured in another company, in order to recover on the policy as though thus reformed, it is necessary that the terms of the former policy be shown.

6. ————: **Mistake: Assured Must Examine Policy: Retaining Policy Without Complaint.** The fact that the assured accepted and retained his policy without complaint during the period of the policy is to be considered in arriving at a conclusion as to whether or not the policy expressed the agreement intended by the parties thereto; it being the duty of the assured to examine his policy and if it does not contain the contract agreed upon, he should notify the company and take steps to reform it.

7. **INSURANCE CONTRACT: Payment of Premium: Estoppel.** The fact that the insured paid, and the insurer accepted, monthly payments according to the monthly adjustment plan of the policy, without reference to the higher or short term rate provisions in the policy, does not estop the insurer from claiming the higher or "short rate" terms provided for upon cancellation of the policy by the assured before the termination of the policy year.

8. ————: **Threats by Insurer's Agent to Cancel: Not a Justification for Cancellation by Assured.** The fact that the agent of the insurance company advised or threatened the assured on several occasions that the company was likely to cancel its policy and suggested that it would be well for the assured to make arrangements to get insurance elsewhere in that event, did not amount to a cancellation of the policy by the insurer and did not justify a cancellation of the policy by the assured, except at the higher or short rate terms contained in the policy.

Appeal from Jasper Circuit Court, Division Number One.—*Hon. Joseph D. Perkins*, Judge.

REVERSED AND REMANDED (*with directions*).

*Spencer, Grayston & Spencer* for appellant.

(1)  Where reformation of an instrument is
prayed, the preceding agreement must be shown.
Dougherty v. Dougherty, 204 Mo. 237.  (2) Courts do
not make agreements for the parties.  Both the agree-
ment and the mistake must be shown; and the evidence
in such case must be clear and convincing.  Landrum's
testimony, being merely his conclusions or understand-
ing concerning a definite and certain agreement al-
ready made and subject only to his approval, was not
sufficient.  Tesson v. Mut. Ins. Co., 40 Mo. 33; Sweet
v. Owens, 109 Mo. 7; Moran Bolt and Nut Mfg. Co.,
210 Mo. 729.  (3) There is no showing that the Aetna
policy did not conform to the terms of the Maryland
policy, which the soliciting agent agreed upon, and,
therefore no showing of a mutual mistake.  Mutuality
of the mistake must be both pleaded and proven.  Meek
v. Hurst, 223 Mo. 696.  (4) The soliciting agent had
no power to write policies or make contracts.  Before
the court would be authorized to reform the policy the
mistake on the plaintiff's side must be traced to the
officers or agents of the plaintiff company who were
authorized to make contracts.  Guernsey v. Ins. Co.,
17 Minn. 104; Thask v. Ins. Co., 58 Mo. App. 438.  (5)
Any question of mutual mistake or of absence of mu-
tual assent was removed by the retention of the policy
by defendant.  Am. Ins. Co. v. Neiberger, 74 Mo. 173;
Steinberk v. Ins. Co., 49 Mo. 265; Birnstein v. Ins.
Co., 82 N. Y. 144.  (6) Courts must construe insurance
contracts as they find them.  Carr v. Ins. Co., 100 Mo.
App. 609.  (7) The court should harmonize all por-
tions of an insurance policy, when possible.  It is only
when there is an irreconcilable conflict between pro-
visions that the court is called upon to determine which
will prevail.  Jackson v. Assurance Co., 63 N. W.
(Mich.), 900, 30 L. R. A. 636.  (8) Where insured
cancels policy, the amount of premium to be paid for
the period during which the policy was in force is
governed by the contract. Ins. Co. v. Peoples F. Ins.,

44 Atl. (N. H.) 83; Ins. Co. v. Brechesien, 35 N. E. (Ohio) 53. (9) The soliciting agent could not consent to cancellations upon terms not provided for by the policy. Rothchild v. Ins. Co., 5 Mo. App. 586. (10) Mere notice of an intention to cancel is not cancellation. Gardner v. Ins. Co., 58 Mo. App. 616; Banking Co. v. Ins. Co., 75 Mo. App. 314.

*Thomas & Hackney* for respondent.

(1) Counsel for plaintiff made no request of the court for a finding of facts, which request must be made before the rendition of judgment, otherwise it is too late. Hamilton v. Armstrong, 120 Mo. 597, 614. (2) If counsel for plaintiff had desired the opinion of the court as to the construction of the policy or the application of the law to the facts in evidence on any point, they should have presented an appropriate delaration of law, if they wished to have the action of the trial court reviewed. Tyler v. Laramore, 19 Mo. App. 458, and cases cited. (3) It was not necessary for the court to decree a reformation of the policy if it found in favor of the defendant on that issue before rendering judgment for the defendant. It was not even necessary for the defendant to pray for a reformation of the instrument, where the answer set up the facts entitling it to such reformation. Barlow v. Elliott, 56 Mo. App. 374, 377; Sieberling v. Tipton, 113 Mo. 381; Tapley v. Herman, 95 Mo. App. 543. (4) As to all issues in the case the judgment for defendant is presumed to be correct and it devolves upon the plaintiff to show that it is not correct. Guinan v. Donnell, 201 Mo. 201. (5) If the judgment of the trial court can be sustained on any theory, it must be affirmed. Gardner v. Robertson, 208 Mo. 605, 614. (6) The agreement between plaintiff's agent, Hirons, and the defendant's general manager, Landrum, was clearly shown by the evidence to be wholly inconsist-

ent with the short rate cancellation feature of the policy and had the effect of waiving it, and was a good defense at law to the plaintiff's action. Fuller v. Fidelity & Cas, Co., 94 Mo. App. 495. (7) The special indorsement on the policy stood as a special written portion of the policy and prevailed over the general printed portion. 1 May on Ins. (3 Ed.), sec. 177. (8) If the policy is open to two constructions, one favorable to the insured and one not, if the insured has acted on the favorable construction, courts will take his view of the contract. Matthews v. M. W. A., 236 Mo. 326. (9) If a doubt exists as to the construction of an insurance policy this doubt must be resolved in favor of the insured although intended otherwise by the insurer. LaForce v. Ins. Co., 43 Mo. App. 518; Hale v. Springfield F. & M. Co., 46 Mo. App. 508; Casner v. Casualty Co., 116 Mo. App. 361; Matthews v. M. W. A., 236 Mo. 326; 1 May on Ins. (3 Ed.), sec. 175. (10) Laches cannot be imputed to the defendant. The defendant accepted the policy under the belief that it conformed to his contract of insurance; and, giving it the construction placed upon the policy by the defendant, the policy did conform to the agreement. In such case, a court of equity will reform the instrument, if reformation be necessary, notwithstanding the delay before the request for reformation. 16 Am. & Eng. Ency. Law (2 Ed.), pp. 869, 870;. Ins. Co. v. Hearne, 20 Wall. (U. S.) 494; 2 May on Ins. (3 Ed.), sec. 566. (11) It was a fraud on the part of the plaintiff when intrusted with the issuance of the policy to so couch the policy in terms contrary to and not expressive of the terms of the agreement; and wherever there is a showing of surprise, misrepresentation or other form of fraud, it is unnecessary to show a mutual mistake. Meek v. Hearst, 223 Mo. 696.

STURGIS, J.—This suit is for a balance upon a premium for liability insurance written by the plain-

tiff and covering defendant's mining operations in
Jasper county. The policy in question is dated De-
cember 30, 1909, and was cancelled by the defendant
on May 2, 1910.

The rate of the premium was four per cent of
the amount of wages expended by the defendant to its
employees, provided the policy was not cancelled by
the assured before the end of the policy period for oné
year, during which the policy would otherwise remain
in force. The policy contained a provision for can-
cellation by either party, but if cancelled by the as-
sured the premium would be considerably greater than
four per cent of the wages paid during the time the
policy had run. The policy contained what is termed
a "short rate" table, showing the amount to be paid
provided the policy is cancelled before expiration.

The policy was continued in force one hundred
and twenty-two days and according to the short rate
table the premium for one hundred and twenty-two
days is fifty and two-thirds per cent of the annual
premium. The petition recites and the evidence shows
that the defendant paid the premium for the period
the policy was in force at the regular rate of four per
cent, which will hereafter be denominated the "long
rate," meaning thereby the rate which would be paid
in case the policy continued for the full policy period.
The petition alleges and the defendant concedes that
it did not pay the premium for the time the policy
was in force at the short rate, and that if plaintiff is
entitled to collect the premium according to the short
rate table, it is entitled to recover the sum of $2985.07,
which represents the difference between the short rate
and the long rate for the period of 122 days, during
which the policy was in force.

The defenses disclosed by the answer are: (1)
That the real agreement between the parties was that
plaintiff would insure defendant from month to month
and that a special provision was inserted in the policy,

giving or intending to give the defendant the right to cancel the policy at any time at the long rate and exempting it from the short rate provisions of the policy; (2) that if the special provision inserted in the policy did not have this effect, then the court should reform the contract so as to express the real agreement of the parties; (3) that defendant had paid and plaintiff received the premium at the long rate for the time during which the policy was in effect and this was a settlement of the amount due; (4) that plaintiff had itself threatened to cancel the policy and that this gave the defendant the right to do so, without being subject to the short rate provision.

The court after hearing the evidence held that the plaintiff was not entitled to collect at the short rate; but that the payments made by the defendant, by reason of an error in the calculation, was $20 less than the amount of premium earned at the long rate and, the parties having agreed as to the amount of this error, entered judgment for plaintiff in the sum of $20.

The finding and judgment of the court does not clearly indicate on what ground the court denied the plaintiff the right to recover on the short rate basis. It will be necessary therefore for this court to determine whether or not the judgment can be sustained on any theory presented by the pleadings and evidence.

I. It is first necessary to determine whether the policy contract as written permits the assured to cancel the policy without paying the short rate premium.

The construction of contracts of insurance are not materially different from other contracts. [Renshaw v. Insurance Co., 103 Mo. 595, 600, 15 S. W. 945; Hoover v. Insurance Co., 93 Mo. App. 111, 118, 69 S. W. 42; Renn v. Supreme Lodge, 83 Mo. App. 442, 446.] Effect must be given if possible to all parts of the policy, both printed and written. No part of the

policy is to be rejected as insensible or inoperative if a rational or intelligent meaning can be given to it, consistent with the general design and object of the whole instrument. [16 Am. & Eng. Ency. Law (2 Ed.), 864.]

This in no way conflicts with the principle invoked by defendant that special written portions of the policy prevail over the general printed portions. [1 May, Insurance (3 Ed.), sec. 177; 16 Am. & Eng. Ency. Law (2 Ed.), 864; Moore v. Perpetual Insurance Co., 16 Mo. 98; Gunther v. Liverpool Ins. Co., 34 Fed. 501.]

Nor with the principle that where the contract is of doubtful or ambiguous meaning it will be construed most strongly against the insurer. [16 Ency. of Law (2 Ed.), 863; Canning Co. v. Guaranty Co., 154 Mo. App. 327, 334, 133 S. W. 664; Mathews v. Modern Woodmen, 236 Mo. 326, 342, 139 S. W. 151; LaForce v. Insurance Co., 43 Mo. App. 518; 1 May, Insurance (3 Ed.), sec. 175.]

The application of the principles last mentioned presupposes that the policy contains clauses conflicting and not reconcilable with each other or that the policy or some clause of the same is ambiguous and reasonably susceptible of more than one construction. Where the meaning and effect of an insurance contract is clear it will be enforced as written. [Banta v. Casualty Co., 134 Mo. App. 222, 226, 113 S. W. 1140; Carr v. Pacific Insurance Co., 100 Mo. App. 602, 609, 75 S. W. 180.] Applying these principles to the policy in question it will be found that there is no conflict between the different clauses and that all may be read and construed together as one consistent whole.

The policy contract is made on a printed form which contemplates a definite policy period, as for instance a year, and an estimated single premium covering that period. The regular form of the policy (without the additions hereinafter mentioned) provides indemnity against loss from claims arising from

bodily injuries and death suffered by employees of the assured. The premium is based on the entire amount of wages paid by the assured during the policy period and is a fixed per cent of that amount. If it be found that the estimated single premium exceeds this amount the company is to refund and if the amount is found to be less than the estimated premium, then the assured is to pay the additional amount. In order to ascertain the amount of wages paid, the assured is required to furnish a written statement, when requested, of the amount of such wages, which the company has a right to examine into and verify. The policy may be cancelled at any time by either party upon written notice. If the cancellation is at the request of the assured the premium is to be computed at what is termed the short rate in accordance with the table of such rate contained in the policy. The acceptance of a policy by the assured is made an agreement that it contains all the terms and agreements existing between the assured and the company or its agents relating to the insurance therein. It contains an approriate blank to be filled in, determining the policy period, which in this case was filled in making the policy period twelve months, beginning December 30, 1909 and ending December 30, 1910. Under the head of warranties the policy contains these clauses, ''Estimated entire compensation for *twelve months, to be ascertained monthly.''* ''Premium rate per $100 of compensation, $4.'' ''Estimated premium, *fifty dollars deposit.*'' The parts printed in italics show the written parts of the policy.

In estimating the full year's premium it was evident in this case that the amount would be large and that the assured desired to avoid the payment of the whole amount in advance and in one sum. This might have been accomplished by making the premium payable at the end or middle of the policy year or by dividing the whole year's premium into twelve equal

parts or monthly installments. Notes with or without interest might have been exacted for the deferred payments. Had this latter plan been adopted it would hardly have been claimed that it interfered with or modified the short rate cancellation feature of the policy. [Ohio Farmers' Insurance Co. v. Hunter, 77 N. E. (Ind. App.), 951.] In fact the method or time of paying the premium, whether in advance or at the termination of the policy period or in one or many payments, would ordinarily have nothing to do with the provisions or terms for cancellation of the policy. A special provision as to time and manner of paying the premium was inserted in this policy (which is the special provision in controversy) which, under the head of "Monthly Adjustment of Premium, $50 Deposit," is as follows: "(1) The advance premium stated in this policy is not based upon the estimated wages for the full policy period, but is the sum hereby agreed to be paid in cash upon delivery of the policy. (2) On or before the twentieth day of each month succeeding the month in which this policy is issued the assured shall state to the company in writing the full amount of compensation earned by his employees during the preceding calendar month, or such part thereof as is within the policy period, and pay to the company in money the entire premium earned upon such compensation at the rates named in the policy; the advance premium to be applied to the last monthly settlement in the policy period."

There is a further clause in the special provision providing that the failure to pay the premium earned for fifteen days after demanded shall effect a cancellation of the policy, which shall be considered as made at the request of the assured within the terms of Condition "K," which is the short rate provision.

It is evident that this monthly adjustment plan is nothing more than a provision for paying the premium at monthly intervals and that the amount to be

paid each month is based on the wages paid for that month; just as the amount to be paid for the whole year is based on the wages to be paid during the year. This, or any other method that might have been adopted for paying the year's premium in installments, was naturally, if not necessarily, based on the supposition that the policy would continue in force the full policy period, for the reason that the company could not anticipate that the assured would cancel the policy. This method of paying the premium does not conflict with the distinct provision retained in the policy providing on what terms the policy might be cancelled before the end of the policy period. Both clauses, each modifying the other to some extent, may be read and construed together and each given its appropriate force and effect.

Construing the whole policy together and giving each clause its proper force and effect we must hold that this policy does not give to the assured the right to cancel this policy, except on the short rate plan therein provided

II.  The next contention of defendant is that the evidence sustains the allegation of its answer that the real contract made by plaintiff through its agents with defendant was and is that plaintiff would so write or modify its policy as to give defendant the right to cancel same at any time by paying the part of the premium then earned based on the regular or long rate. The answer asked the trial court, in case it found that the written contract did not conform to this real contract, that the same be reformed so as to fully express the agreement of the parties in this respect.

This answer enters the domain of equity, as reformation of contracts is essentially an equitable proceeding. [Insurance Co. v. Wilcox and Gibbs Guano Co., 65 Fed. 724, 730; Insurance Co. v. Mowery, 96 U. S. 547; Steinberg v. Phoenix Ins. Co., 49 Mo. App. 255.]

The case seems to have been tried by the parties as an equity case and the form of the judgment of the court follows this theory. The court did not in terms reform the policy contract and we will concede as contended by defendant, that where the mistake is pleaded by way of defense no actual reformation of the terms of the contract is necessary. [Barlow v. Elliott, 56 Mo. App. 374, 377; Seiberling v. Tipton, 113 Mo. 373, 381, 21 S. W. 4.] All that is necessary is that the court give the defendant the same relief as it would if the contract stood corrected.

It is necessary, however, for this court to determine whether the evidence would support a decree of reformation. "In equitable proceedings to reform a written contract on the ground of mistake, the burden of proof rests upon the party who asserts it, and he must establish its existence by clear and convincing evidence, and if he fails to do so, the relief prayed will be denied. [State ex rel. v. Frank's Admr., 51 Mo. 98; Jusdon v. Mullinax, 145 Mo. 630.]" [Moran Bolt & Nut Mfg. Co. v. St. Louis Car Co., 210 Mo. 715, 729, 109 S. W. 47.] That the evidence in such cases must be clear and convincing is also held in Dougherty v. Dougherty, 204 Mo. 228, 102 S. W. 1099.

It is questionable if there is any evidence sufficient to support a finding that plaintiff by its agents agreed to furnish a policy providing for the cancellation of the same on other than the short rate terms; and in so holding this we waive the question of the power of the soliciting agent, who was a mere solicitor of insurance, without any power to issue policies, to make any such contract.

The evidence is that the agent soliciting this insurance had previously procured liability insurance for this same defendant in the Maryland Casualty Company, called in the record the Maryland Company. That company cancelled its policy because the pre-

mium was too low, and this agent solicited defendant to take a policy with the plaintiff. Mr. Landrum, the defendant's manager, was absent in another State at that time and the talk was had with Mr. Young, the defendant's cashier. The talk was by telephone and agent Hirons says that he suggested putting the insurance with the Aetna (plaintiff) until Mr. Landrum returned and it would then be subject to his approval. As to what the verbal contract was, the agent Hirons testified that there was nothing said as to the difference between the new policy and the old one in the Maryland Company, except there was a difference in the rate. The Maryland policy was at a three per cent rate and the new policy was to be at a four per cent rate with "monthly adjustments." "Q. You stated to Mr. Young that the Aetna would take over the insurance on the same terms the Maryland had it, excepting the increase of the rate? A. Yes." And again, "Q. I will ask you to state whether or not in your conversation with Mr. Young, whether or not you recited to him what the monthly adjustment provisions would be in the policy? A. No, sir. Q. Then what did you say to him as to what the monthly adjustment provision would be? A. I thought it would be the regular monthly adjustment, referring to the same adjustment we had had in the Maryland contract." In regard to this matter Mr. Young testified: "Q. Mr. Young, on the 29th or 30th day of December, do you recollect the conversation with Mr. Hirons regarding the taking over of liability insurance from the Aetna Company? A. Mr. Hirons called up over the telephone and told me that the Maryland people had cancelled our policy, and said he could place it with the Aetna people. Mr. Landrum was out of the district at that time, and I told him to place it there subject to Mr. Landrum's approval when he returned, on the same contract we had with the Maryland except the different rate, four per cent instead of three. Q. Do you remember whether you went into

detail with him at any time any more than simply putting it subject to Mr. Landrum's approval on his return? A. No, sir; I didn't go into detail with him." And Mr. Landrum testified as to his conversation with the agent, Hirons, as follows: "Q. State what was said. A. Mr. Hirons told me our payments would be from month to month just the same as they had previously been made by us, on the first of the month." This evidence clearly referred to the monthly payments made to the Maryland Company on the old policy.

The talk between the agent, Hirons, and Mr. Landrum was as to a past contract and was admissible only as showing what the contract was. No where does he or any one else say that the agent told him that the policy contract was or would be such as to allow a cancellation on other than the short rate terms. Mr. Landrum's expression that he "considered that he was out when he paid them what he owed them" falls far short of the legal requirement in that regard. [Moran Bolt & Nut Mfg. Co. v. St. Louis Car Co., 210 Mo. 715, 729, 109 S. W. 47.]

The most that the proof shows is that the plaintiff agreed to furnish a new policy in the plaintiff company with the same provisions as to monthly adjustment as contained in the old Maryland Company policy. There is no proof in the record that it did not do so. The Maryland policy or any proof as to its provisions was not put in evidence. For aught that the record discloses the defendant got a policy in all respects like the Maryland policy. In order to recover because of a mistake in a written contract the terms of the preceding agreement between the parties must be shown. [Dougherty v. Dougherty, 204 Mo. 228, 237, 102 S. W. 1099.]

Moreover the evidence shows that the defendant accepted and retained this policy without any complaint during the entire period, and this is entitled to

some weight, as the authorities hold that it is the duty of the assured to examine his policy and, if it does not contain the contract agreed on, to notify the company and take steps to correct it. [American Insurance Co. v. Neiberger, 74 Mo. 167, 173; Steinberg v. Phoenix Insurance Co., 49 Mo. 255.]

III. We are not impressed with the argument that because defendant paid and plaintiff accepted the monthly payments without reference to the short rate provisions that it is thereby estopped to claim the higher short rate provision terms. The plaintiff had no right to anticipate that the defendant would cancel its policy, or when it would do so, and it is only because of the cancellation that it is entitled to the higher or short rates.

IV. Lastly the defendant claims its right to cancel without paying the short rate premium because the agent of plaintiff advised or threatened the defendant that plaintiff was likely to do the same thing. Two or three such so-called threats are mentioned in the evidence but the one on which defendant says it *acted* was made in March previous to the cancellation in May. That so-called threat really came from the adjuster, who complained that certain "snitch lawyers" having their habitat about Joplin were receiving information as to all accidents about defendant's mines and were bringing annoying suits, etc. The threat was that unless this "snitch" business was stopped the adjuster was likely to recommend a cancellation and it would be well for defendant to make arrangements so it could get other insurance in that event. The defendant promised to correct this evil.

We think it is clear that this would not amount to a cancellation of the policy by plaintiff and would not justify a cancellation by defendant, except at the short rate terms contained in the policy. [Gardner v. Standard Ins. Co., 58 Mo. App. 611, 616; Banking Co. v.

Insurance Co., 75 Mo. App. 310, 314; Van Tassel v. Greenwich Ins. Co., 25 N. Y. S. 301.]

As the judgment of the trial court cannot be sustained on any theory, and the parties have agreed in the trial court that, in case the defendant is liable for the short rates because of its cancellation of the policy in question, the amount sued for, to-wit, $2985.07, is due the plaintiff, the judgment is reversed and remanded with directions to the trial court to enter judgment for plaintiff in that sum.

*Farrington, J.,* concurs. *Robertson, P. J.,* not sitting.