## J. B. TAYLOR, RESPONDENT, *v.* O. W. PETERSON, APPELLANT.

REFEREE.—The only order under which a referee can act, is the one duly made and entered of record before he enters upon his duties; to that he must look for his authority, and he can not go beyond it.

AMENDMENTS.—An order appointing a referee may not be amended 'against objections, after such referee has acted, so as to make valid acts not authorized by the original order appointing him and prescribing his duties.

EXCEPTIONS.—If a party take no exception to an order of court confirming the report of a referee, he is not in a condition to urge objections to such order in this court.

IDEM.—Exceptions must be taken to an order overruling a new trial, and preserved in the record, if a party wish to avail himself of the error in the appellate court.

FINDINGS—STATEMENT—REVIEW—EXCEPTIONS.—This court will not look into a statement with a view to determine therefrom whether the evidence will support the findings or judgment, unless the party has placed himself in a position to object to the order of the court overruling a mo-

33

tion for a new trial by proper exceptions, and further than it will where no appeal has been taken from such order.

INTEREST.—In the absence of an agreement to pay interest, and of any accounting between the parties, interest does not run, as a general rule.

APPEAL from the district court of the second judicial district, Boise county.

*Prickett & Hasbrouck, and J. Brumback,* for the appellant.

*J. W. Huston,* for the respondent.

HOLLISTER, J., delivered the opinion, WHITSON, J., concurring specially. NOGGLE, C. J., dissented.

This was a complaint filed in equity by the respondent against the appellant in the district court of Boise county, in which it was alleged that he and the appellant formed a copartnership on the twenty-fifth day of June, 1867, for the purpose of manufacturing and selling lumber at Idaho city, under the firm name of Taylor & Peterson, and that from thence until the twenty-second day of March, 1869, they conducted their business, when the active operations of the partnership ceased. By the terms of the partnership agreement each partner was to contribute equally to the partnership stock and property, and the two were to share in equal moieties the profits, and to bear equally any losses in their partnership business. The stock and property contributed by both partners consisted of certain real estate and a steam sawmill with its fixtures, etc., together with some logs and lumber then on hand.

The complaint alleges that after a certain period (before which the firm had in its employ a clerk who kept the books of account) the appellant undertook and agreed to keep the books of the firm, and to keep and render full, fair, and true accounts of its transactions and of all moneys received and paid out on the firm account, and that he did thereafter keep the books of the firm, and during the existence of the partnership, and since, received in charge and custody the moneys belonging to said firm. The complaint further alleges that the appellant did not keep correct, full, or true accounts of the moneys and business transactions of the

partnership, but, on the contrary, and with intent to defraud the respondent, had kept imperfect, false, and fraudulent accounts thereof, and had converted the partnership moneys and assets to his own private use, by means whereof the respondent had been defrauded of his just rights. The complaint calls for an accounting, and prays for such other and further relief as may be necessary and just. An answer was put in denying the material allegations of the complaint, to which there was a replication, on which the issues were formed, for trial. On the third day of July, 1872, it being the third judicial day of the term, the court ordered that the case be referred to Jonas W. Brown, Esq., to take the proofs, and that the hearing of the cause should be had upon such day of the term as the court should appoint. On the twenty-second day of July the report of Mr. Brown was received, containing the proofs, and also his findings of fact and of the law arising therefrom. The appellant objected to the receiving and considering the report on various grounds, and particularly on the ground that under the order referring the case to the referee he had no authority to find the facts nor his conclusions of law.

On the twenty-seventh of July the cause came on to be heard upon the objections, and the court, after considering the same, found that the entry of the order of reference made on the third day of July was defective in not stating that the referee was appointed to report the conclusions of law as well as the facts in the cause, and ordered that said entry be amended *nunc pro tunc,* so as to show that he was appointed to report the conclusions of law as well as of facts found in said cause, and that the objections taken thereto be overruled. To this order the appellant took his exceptions in due form.

On the same day the cause came on to be heard upon the exceptions taken by the appellant to the report, and after argument, the court took the same under advisement until the third day of August, the same being the eleventh day of the term, on which day the court overruled the exceptions and ordered that a decree should be entered for the recovery by the respondent of the appellant of the sum of five thou-

sand nine hundred and nineteen dollars and ninety-five cents, and costs of suit taxed at four hundred and three dollars and ninety-five cents.

Thereupon the appellant entered his motion for a new trial upon the following grounds, viz.:

1. Error in law occurring at the trial and excepted to by him, as follows: Error in law in overruling the objections to the report of the referee. Error in law in overruling the exceptions to said report.

2. For errors in law apparent upon the face of the papers, record, and proceedings in the suit.

3. Insufficiency of the evidence to justify the findings of the referee or the judgment.

It is undoubtedly the law that the only order under which a referee can act is the one duly made and entered of record before he enters upon his duties. To this he must look for his authority, and he can not go beyond it and take upon himself any duty with which it has not charged him. Should he do so, his acts are of no more binding force in law than are those of a private individual, and all parties who are sought to be bound by them may regard them as of no validity. Nor can such acts be made valid by any subsequent order of a court made against the objections of a party after the referee has completed his work. In this case, the report was in and the facts and conclusions of law were found by the referee before the original order under which he acted was amended. In amending the order, therefore, under such circumstances, we think the court erred, but we do not deem it such an error as to require us to send the case back for correction in the court below.

On an inspection of the decree it will be seen that the judgment of the court was founded upon the proof reported; and though it is apparent the court took into consideration the findings of the referee, yet it does not seem clear that they were considered in any other light than merely as advisory.

We are not disposed to consider the objections to the report as well founded. It is not pretended that it was erroneous in every respect. Certainly the erroneous findings

did not render it so, nor did any error in receiving and reporting improper testimony render the unobjectionable portions bad. The objections went to the entire report, and some portions being good, the court could not, without doing injustice, throw them out simply because other portions were objectionable.

As the appellant took no exceptions to the action of the court in overruling his exceptions to the report of the referee, he is not in a condition to urge his objections thereto in this court. His failure to do so must be considered as a waiver of his objections and an acquiescence in the ruling of the court. The appellant is in the same condition as to the order of the court in overruling his motion for a new trial. Exceptions must be taken to an order overruling a motion for a new trial and preserved in the record, if a party wish to avail himself of the error in the appellate court. (*Scott v. Cook,* 1 Or. 24; *Boyle* v. *Levings,* 28 Ill. 314.)

In this case, the appellant failed to do so, and his failure precludes him from urging his objections here. Nor can he for the same reason object to the decree of the court on the ground of the insufficiency of the findings of the referee, or of the evidence, to justify the judgment. This court will not look into a statement with a view to determine therefrom whether such evidence will support the findings or the judgment unless a party has placed himself in a position to object to the order of the court, overruling a motion for a new trial, by proper exceptions, any further than it will where no appeal has been taken from such order. In the absence of any exceptions thereto, we must treat the question as though no appeal had been taken from such order, and in such a case, the statement serves no purpose but to point out such errors as may have intervened during the progress of the trial.

As no specific objection was made to the decree on the ground that it could not be supported by the pleadings, we are left to determine the question, unaided by the views of counsel. As nothing but the general statement, that a new trial should be awarded because of the errors of law apparent upon the face of the papers, record, and proceedings

in the suit, has been made on this point, and this only in connection with the ruling of the court on the motion for a new trial, we might dispose of it in the same manner as we have the latter. The proper practice is for the party urging such objection to move in arrest of judgment after the motion for a new trial has been disposed of. Such a motion is the only legitimate one that can be made, where a party has not made a case in his pleadings that will support a judgment in his favor. In this way the attention of the court is called to the defective pleadings, and opportunity given to determine their sufficiency.

We think the appellant should have entered such motion, and had the ruling of the court upon it, so that such ruling could be brought here for review. However this may be, we hold that in this case, the respondent laid a sufficient foundation in his complaint for the judgment that was rendered in his favor, for he asked for an accounting and for general relief.

It was shown by the proofs that the appellant had drawn out a large amount of the profits of the partnership business in excess of his share—for his private use, that the firm owed little less than one hundred dollars—that the active operations of the firm had ceased, and that for all practical purposes with the exception of the above outstanding debts and some uncollectible accounts due the firm, the partnership was dissolved, and that there should be a final winding up of its affairs, and an adjustment of the unsettled matters between the parties. In such a condition of things it does not seem equitable that one of the partners should be permitted to have the control of the assets for the purpose of winding up the business, when its effect would be injurious to the interests of the other, and without benefit to the partnership interests. This showing of facts came properly in to the support of the prayer for an accounting and for general relief, and justified the court in its final action. We think the form of the complaint, and its sufficiency, well enough for the purpose.

In the case of *Miller* v. *Lord*, 11 Pick. 10, it was held by the supreme court of Massachusetts, on a bill filed by one

partner against another, to compel him to account, that it is sufficient to pray in substance that he may be held to account—that such a prayer includes something more than barely to state an account; and that a party bound to account is bound thereby to pay any balance that may be found due.   This we consider sound doctrine and applicable to the case at bar.

In making up the decree, the court allowed the respondent interest on the sum found due from October 21, 1870, to the date of the report, amounting to eight hundred and eighty-one dollars and seventy-nine cents.   This we think was erroneous.   There was no agreement between the partners that interest should be charged upon such share of the profits as each should draw out for his private use.   In the absence of such an agreement, and of any accounting between the partners, interest does not run as a general rule.   This error can be corrected here, however, by such a modification of the judgment as will exclude such interest, and this being so, the cause will not be remanded.

It is therefore adjudged that the judgment of the court below be reversed, and that respondent have judgment here for the sum of five thousand and thirty-eight dollars and sixteen cents, together with interest thereon at ten per cent. from the date of the entry of the judgment below.   It is further adjudged that the order of the court below overruling the motion for a new trial, be affirmed, and that the respondent pay the costs of the proceedings in this court.

WHITSON, J.   While I concur in most of the views expressed by Justice Hollister in the foregoing opinion, I feel it my duty to dissent from the opinion on some of the questions involved.

The order entered by the court below, *nunc pro tunc,* was, in my opinion, just such an order as was warranted by the facts in the case.   It is a well-established principle, that a court has complete control of its records in a cause until a final determination thereof, and that the court has full and complete power to make the record conform to the facts during the progress of the trial or proceedings.   The

record is no part of the action of the court, but only the evidence of such action, and when parties to a suit understand what the action of the court is, and are controlled by it, it is then too late to object that the record fails to show that a certain fact existed, when they do not deny its existence, but, on the other hand, acted in accordance with the direction of the court, before discovering that the evidence of such direction was wanting.

In this case it is not contended that the record of the order *nunc pro tunc* falsifies the facts, but that, as the record did not show the authority of the referee to find the facts and conclusions of law, but simply to take the proofs, he had no right to go farther than the record warranted. The record shows that the defendant recognized the right of the referee to make findings of fact and conclusions of law from the proofs; for, by his attorneys, he appeared before the referee and argued the case without ever raising any objection to the authority of the referee to find the facts and law from the proofs, and it was only when the referee had reported against him that he objected. If, however, the referee transcended his authority by going too far, did not the defendant, by appearing before the referee and arguing the case, thereby consent to the referee deducing the facts and law from the proofs? It is not a jurisdictional question for the court, aside from doing what it in fact did do, had an undoubted right to do.

The defendant did not, and did not in the court below, claim that he was taken by surprise, or that the referee, in point of fact, was not, by order of the court, authorized to do just what he did. After the defendant had proceeded in the case, as though the record showed the authority of the referee to do all he did do, did not the defendant by that action cure the record, even without any order of court *nunc pro tunc?* I think he did, and that such assent was as binding on him as if he had agreed, in writing, to the reference under section 182 of the civil practice act. Did not the defendant, by his objection to the report, attempt, not only to vitiate what he himself had consented to and helped to bring about, but also to annul an order of court,

which in fact, and which he did not deny, had been made, but which by a mere inadvertence had not been entered by the clerk. It seems to me that the defendant was doubly bound by the report, so far as the authority of the referee went, to do that which was objected to.

Another point upon which I feel impelled to differ from the opinion, is the question of interest. The defendant in this case was the book-keeper of the firm as well as a partner of the plaintiff, and as such was intrusted with the receiving and disbursing of all the moneys of the firm. The account between plaintiff and defendant was not an open, mutual, and current account, where each was presumed to keep his own account, and one in which it was necessary for the parties to come together and have a full and complete settlement, in order to determine the balance between them. The amount due the plaintiff depended entirely upon the books kept by the defendant, and he knew, or must be presumed to have known, when the active operations of the firm ceased, what amount was due his partner; and it being his duty to pay over such an amount as was due, he ought, I think, to be made to pay interest thereon.

It appears that there was a large amount due the respondent, at the time when the active operations of the firm ceased, and this too, from the books kept by the appellant, which must be regarded as his own admission of that fact. What settlement then was necessary? The defendant admitted in writing that there was a large amount due the plaintiff, and although he denied in the suit that any amount was due, the court found that his own books admitted it, and gave a decree accordingly.

This case is not similar to one in which there are transactions between two persons not united in business, and each of whom is presumed to keep an account of the transactions, and in which it would be necessary to compare books and accounts with one another, but a case in which it is conceded that one individual member of the firm was intrusted with keeping all the accounts and money, and who could know at any time the state of the business and the amount due each partner.

The money received by the defendant was not a loan from the plaintiff, as in ordinary transactions between individuals, but simply money received by him in a fiduciary capacity, and a failure on his part to pay the plaintiff his share was a conversion of the plaintiff's money to his, the defendant's, own use. I have yet to find a single case in which the wrongful conversion of money or property has not subjected the wrong-doer to pay for his wrongful act. The case of *Reid* v. *Rensselaer Glass Factory*, 3 Cow. 436, bears upon this case.

There is still another point upon which I can not agree with my learned associate, and that is, as to the reversal of the judgment below. I do not think that because the court below gave too large an amount, the judgment should be reversed.

Section 293 of the civil practice act provides that "upon an appeal from a final judgment or order, the appellate court may reverse, affirm, or modify the judgment or order appealed from." If the judgment of the court below was too large to the amount of the interest which the court allowed, then it is certainly a proper case for modification, and the judgment should not be reversed, but modified.