THE BURLINGTON INSURANCE COMPANY v. ALEXANDER McLEOD.

1. INSURANCE POLICY; *Stipulation; Cancellation.*  Where an insurance policy contains a stipulation that "the assured may also cancel this policy by surrendering the same at any time after the premium or premium notes have been paid, the company retaining short rates and all expenses incurred in taking the risk," and the premium notes are due and payable "on or before" certain dates, the assured may cancel the policy, or have it canceled, at any time, by simply complying with the stipulation.

2. CANCELLATION, *Right to Demand, When.*  And in such a case, where the assured has already paid a portion of the premium, and such portion is in excess of the "short rates and all expenses incurred in taking the risk," it is immaterial whether he pays the premium notes or not before demanding the cancellation of the policy.  In such a case he would have the right to have the policy canceled without paying the premium notes.  But in all cases it would be necessary for him to pay the insurance company an amount of money equal to the "short rates" stipulated for, and the reasonable expenses incurred by the company in taking the risk, before demanding the cancellation of his policy.

3. EXPENSES; *Question of Fact.*  And what are the reasonable expenses incurred by the company in taking the risk, is a question of fact for the jury, and not a question of law for the court.

4. —————— *Short Rates.*  And if any of such reasonable expenses are included in the "short rates" stipulated for, those included in the "short rates" are not, in addition to the "short rates," to be retained by the company as expenses.

*Error from Marshall District Court.*

ON May 10, 1883, *Alexander McLeod* insured his property against fire, lightning, tornadoes, cyclones and wind-storms, in

*The Burlington Insurance Company,* to the amount of $8,115, for the term of five years, at an agreed premium of $325, to be paid by the assured. Of this premium, $108.70 was paid to the company's agent at the time of writing the applications for the insurance — two in number — and the assured gave the company his two promissory notes, each for $108.15, drawing interest at the rate of 4 per cent. per annum, due respectively "on or before" May 1, 1884, and May 1, 1885, for the unpaid portion of the premium. Afterward the policies — two in number — were issued by the company and received by McLeod, who held them until August 17, 1883, when he returned them to the company, asking that they be canceled. The right to have each of them canceled was reserved to McLeod in the following words, to wit: "The assured may also cancel this policy by surrendering the same at any time after the premium or premium notes have been paid, the company retaining short rates and all expenses incurred in taking the risk." The policies were returned by the company to McLeod, and the company refused to cancel the same for the alleged reasons that he had not paid the two premium notes nor all the expenses incurred in taking the risk. Again, on September 2, 1883, McLeod returned the policies to the company, renewing his request to have them canceled and his notes returned. This second request was refused for the same reason as before, and McLeod was informed by the company that it would hold the policies for him and subject to his order and his right to have the same canceled when he complied with what the company claimed to be the contract. On February 2, 1884, McLeod commenced this action against the insurance company, in the district court of Marshall county, alleging in his petition, among other things, the taking of the insurance, the payment of the premium in accordance with the terms of the policy, his election to have the policies canceled, his surrender of the policies to the company, and a demand for a return of $259.60, the amount of the paid but unearned premiums, closing with a prayer for judgment for that sum. To this petition the defendant answered, denying

generally, and also setting forth the execution of the two promissory notes; that they were wholly unpaid; that McLeod had a right by the terms of the policies to cancel them at pleasure only upon payment of his premium notes in full, and that the company then had the right to retain out of the amount paid an amount at the usual and customary rates, together with all the expenses incurred in writing said insurance and taking said risk; that at the date of the surrender of the policies by McLeod the customary short-rate premium would amount to about $70; that the expenses incurred in taking the risk and in writing the insurance were $124.61; that by the terms of the policies McLeod should pay said amounts before he could recover of the company or cancel his policies. To this answer McLeod filed no reply. On September 6, 1884, the case was tried upon the petition and answer, before the court and a jury, and a verdict and judgment were rendered in favor of the plaintiff and against the defendant for the sum of $43.41. The defendant brings the case to this court for review.

*Lowe & Smith*, for plaintiff in error.

*C. H. Lemmon*, and *W. A. Calderhead*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The plaintiff below, Alexander McLeod, holding two insurance policies for the aggregate amount of $8,115, issued by the Burlington Insurance Company, desired to have them canceled, in accordance with a stipulation contained in each of them, which stipulation reads as follows: "The assured may also cancel this policy by surrendering the same at any time after the premium or premium notes have been paid, the company retaining short rates and all expenses incurred in taking the risk." The company refused to cancel these policies, for the alleged reasons that McLeod had not paid the two premium notes given by him to the company, nor the expenses incurred in taking the risk. The plaintiff

had already paid the company, as a portion of the premium for the policies, $108.70, and had given to the company his two promissory notes each for $108.15, for the remainder of the premium, which promissory notes, being due "on or before" certain dates, were due and payable at any time when the plaintiff might elect to treat them as due. Hence under said stipulation the plaintiff had the right at any time after

1. Insurance policy; stipulation; cancellation.

receiving the foregoing policies to have them canceled by simply complying with the stipulation. The policies were issued on May 10, 1883, and the plaintiff applied to the company to have them canceled on August 17, 1883. It is agreed by the parties that the amount of the above-mentioned "short rates" for the time which the policies were permitted to run before the plaintiff demanded their cancellation was $64.92. This amount it is also agreed the company was entitled to retain; but the company claims that before the assured could cancel his policies or have them canceled, it devolved upon him to pay to the company the amount of the two premium notes, and that the company would then be entitled to retain not only the amount of the "short rates," but also certain other and additional amounts as expenses incurred in taking the risk. These other and additional amounts claimed by the company are as follows:

| | | |
|---|---|---|
| Five per cent. of the premium paid to the company's general agent...................................................................... | $16 | 23 |
| Thirty per cent. of the premium paid to the company's local agent...................................................................... | 97 | 38 |
| Two and one-half per cent. of the premium paid to the state of Kansas................................................................... | 8 | 12 |
| Interest on the two premium notes......................................... | 2 | 88 |
| Total................................................................... | $124 | 61 |
| Add to this the amount of the "short rates"........................... | 64 | 92 |
| Making a total to be retained by the company of.......... | $189 | 53 |

We understand that the words "short rates" mean the various rates of premium for specified short times. The meaning would probably be better expressed by the use of the words: "Premium, or premiums, at short-time rates."

According to the express terms of the foregoing stipulation,

the plaintiff had no right to cancel the policies until he paid the premium notes; but still if the amount which he had already paid was in excess of the "short rates and all expenses incurred in taking the risk," it would be immaterial whether he paid the premium notes before demanding the cancellation of his policies, or not; for he would not be compelled to do the foolish thing of paying the amount of the premium notes to the company, when it would be the duty of the company to immediately return the same to him. But under any circumstances, before the plaintiff could cancel his policies, it would be necessary that he should pay to the insurance company an amount of money equal to the "short rates" stipulated for, and all the reasonable expenses incurred by the company in taking the risk. The question then arises: Did he do this? In the court below it was held that he did, and that he paid $43.41 more than that amount; and judgment was rendered in his favor and against the company for $43.41. The court below instructed the jury in substance that the "short rates" included all the expenses incurred in taking the risk, and that the company was not entitled to retain more than simply the amount of the "short rates." The question then arises: Was this instruction correct? Does the amount of the "short rates" include the commission paid to the general agent, the commission paid to the local agent, and the taxes paid to the state? If it does, then the instruction of the court below is correct; but if it does not, then such instruction is erroneous. There was evidence introduced on the trial tending to show both that these items of expense are not included in the amount of "short rates," and that they are; but the stipulation itself would seem to indicate they are not; for the words "short rates" can hardly be construed to mean the same thing as the words "short rates *and* all expenses incurred in taking the risk." There is some reason, however, for holding as the court below did; for, construing the foregoing stipulation as the defendant does, and allowing the defendant all the items which it claims it is entitled to, would seem to render the contract between the

2. Right to demand cancellation, when.

13 — 34 KAS.

parties, in case of cancellation, very unjust, and manifestly unconscionable. One hundred and eighty-nine dollars and fifty-three cents is certainly an enormous amount of money to pay for the insurance—a little over three months—of a farm house, the furniture therein, stock, etc., valued in the aggregate at $8,115. Prudent men might hesitate to insure in a company whose premiums at short-time rates must necessarily be so enormous, or which incurs such great expenses in taking risks. While the evidence on the trial tended to show that this company pays its local agents thirty per cent. of the premium paid by the assured, and receives nothing back in case of a cancellation of the policy, other companies pay their local agents only fifteen per cent. of the premium, and in case of a cancellation of the policy receive back a *pro rata* share of the agent's commission, corresponding with the unearned portion of the premium, and with that portion which the company pays back to the policyholder. But while this contract between the assured and the company seems to be unconscionable, if construed as the company desires to have it construed, yet if such is the proper construction thereof, it must be so enforced. Contracts are made to be enforced; and if men persist in making foolish contracts, they must be bound by them. Whether such contracts should be prohibited, or not, is a question for the legislature, and not for the courts.

But even with the company's construction of the contract, it does not follow that the company is entitled to retain all that it claims. As before stated, if the amount already paid by the plaintiff is sufficient to cover the "short rates and all expenses incurred in taking the risk," the plaintiff will not be required, before canceling his policy or having it canceled, to pay the premium notes or any interest thereon; and if on the trial it be found as a fact that 30 per, cent. of the premium is an unreasonably large commission to be paid to the company's local agent, the company will not be allowed to retain that amount. And the same with respect to the other items of alleged expense. It cannot be supposed that the plaintiff, when he agreed to the stipulation that the company might on

cancellation of the policy at his instance retain "short rates and all expenses incurred in taking the risk," understood that the company should pay or incur more than reasonable expenses in taking the risk — and this is all that he is liable for; therefore the company, in addition to "short rates," will be allowed to retain only an amount equal to the reasonable expenses which it might have incurred in taking the risk; and not even that amount unless it has actually paid or incurred the same, and unless the same are not included in the "short rates" item stipulated for. In other words, the company is not entitled to retain as expenses more than its actual and reasonable expenses in taking the risk, and these only once, whether they are included in the "short rates" item or not. If they are included in the "short rates" item and there allowed, then they cannot again be allowed. What the reasonable and actual expenses are, and whether they, or portions thereof, are included in the item designated as "short rates," are proper questions of fact to be submitted to the jury, under proper instructions. The court below, however, decided them as questions of law, and for this error its judgment must be reversed, and the cause remanded for a new trial.

3. Reasonable expenses; short rates; question for jury.

All the Justices concurring.