AETNA LIFE INS. CO., Respondent, v. KANSAS CITY ELECTRIC LIGHT CO., a Corporation, CONSOLIDATED ELECTRIC LIGHT AND POWER CO., a Corporation, UINTED ELECTRIC LIGHT CO., a Corporation, STANDARD ELECTRIC LIGHT COMPANY, of Argentine, Kansas, a Corporation, KANSAS RAILWAY & LIGHT CO., a Corporation, Appellants.

**Kansas City Court of Appeals, December 7, 1914.**

1. **INSURANCE CONTRACTS: Ambiguous Clauses: Construction.** If an insurance contract contains clauses of doubtful, ambiguous, or conflicting meanings they will be construed most strongly against the insurer. But different clauses are not to be deemed conflicting if they can be harmonized and both upheld. If they apply to different situations or circumstances, then each should be applied to the situation it was designed to meet.

2. ————: ————: **Rate of Premium.** Where, under one clause, either party could cancel the policy at any time, and the assured cancels it but is not going out of the business for which the insurance was taken, the premium is fixed at one rate, and under another clause the premium is fixed at another rate if the assured decides, at the end of the first policy year, not to carry that kind of insurance, the rate is determined by the former clause where the evidence shows that the policy was not canceled at the end of the first policy year, the assured

continues in business and there is no evidence that it decided not to carry that kind of insurance.

3. **EVIDENCE: Examination of Witnesses.** An objection to a question, which involved the theory or intent with which a payment was made by defendant to the witness, was properly sustained.

4. ————: ————: **Cross-examination.** When a witness is being cross-examined and it is sought to contradict him by asking him concerning a document in possession of the examiner, the witness should be shown the document before being required to answer, and if this is not done, an objection to such cross-examination as to such document is properly sustained.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie,* Judge.

AFFIRMED.

*John H. Lucas* for appellants.

(1) The court erred in applying cancellation clause "K" in rendering judgment herein. The companies going out of business were entitled to cancel the policy without the application of "customary short rates," and instruction number 1 should have been given. LaForce v. Insurance Co., 43 Mo. App. 530; Mathews v. Woodmen, 236 Mo. 342-434. (2) The court erred in allowing interest. There was no sufficient proof of demand. McDonald v. Loewen, 145 Mo. App. 59.

*C. A. Lawler* and *C. S. Palmer* for respondent.

(1) The fact of its own existence and occupation being peculiarly within the knowledge of each of the appellants, such a fact, as expiring charter or retiring from business, if it existed should have been pleaded and proved at the trial. Kitchen v. Railroad, 59 Mo. 514; State ex rel. v. Schar, 50 Mo. 393; State v. Schatt, 128 Mo. App. 622. (2) No such question

was raised in the trial court, and it will not be considered here. Sec. 2081, R. S. 1909.

TRIMBLE, J.—Plaintiff issued to the defendants a policy of indemnity insurance which covered a term of three years. At the expiration of twenty-seven and one-half months the policy was canceled by the assured, which right was accorded defendants by the policy. Plaintiff claimed a balance due on the premium earned during the time the policy continued in force, and brought this suit to recover $1843.70 as such balance.

The answer admitted the issuance of the policy to the defendants, although the name of one of the defendants does not appear in the policy as shown in the record. The answer further set up that under a special agreement made at the time the policy was issued and accepted, the premium to be paid in case of cancellation was that actually earned at the time it was canceled; and that when the policy was canceled, defendants paid the premium due for the time said policy was actually in force. This agreement was embodied in a "Special Cancellation Privilege" endorsed upon the policy as follows :

"It is hereby understood and agreed that if, upon the expiration of the first policy year, the assured concludes not to carry public liability insurance, this policy may be cancelled on the request of the assured, and the earned premium shall be computed at the rate of four dollars and eighty-five cents ($4.85), for each one hundred dollars ($100) of wages expended during the period insurance hereunder has been in force. Nothing herein contained shall be held to affect or modify any provision or condition of the policy, other than as above stated."

Plaintiff claims that the premium earned is not governed by the above agreement, but is governed by paragraph "K" of the policy, which is as follows:

"Cancellation. K. This policy may be cancelled at any time by either of the parties hereto upon written notice to the other party stating when thereafter cancellation shall be effective; the date of cancellation shall then be the end of the policy period, and the earned premium shall be computed and adjusted as provided in condition J hereof. If, however, such cancellation is at the request of the assured and he is not retiring from the business herein described, the compensation for the full original policy period shall be computed upon the basis of the compensation to date of cancellation, and the earned premium calculated at the customary short rates in accordance with the table printed hereon. In any case, where cancellation is at the request of the assured, the minimum earned premium stated in condition J shall be retained by the company. Notice of cancellation mailed to the address of the assured herein given shall be a sufficient notice, and the check of the company similarly mailed a sufficient tender of any unearned premium."

The court held that under the facts of the cancellation disclosed by the evidence, the premium earned was to be determined by paragraph "K," and rendered judgment for the $1843.70 sued for with interest from date of suit.

The policy was issued to the various named companies all of whom were collectively referred to therein as "the assured." One hundred dollars was paid on the delivery of the policy as an estimated and minimum premium. The full premium for the three years was to be $4.60 for each $100 of "the entire compensation, whether salaries, wages, piecework, over time or allowances, earned by all employees of the assured not herein specifically excluded, engaged in the operation of the business herein stated during the period of this policy." According to

clause "K" of the policy the compensation for the original policy period should be computed upon the basis of the compensation to date of cancellation, "and the earned premium calculated at the customary short rates in accordance with the table herein."

The total expenditure for wages earned for the twenty-seven and one-half months was $318,557.77 and on the basis of this actual expenditure for that time, the expenditure for the three years would be $417,021.05, and the premium on that would be $19,182.97 at $4.60 per $100. According to "short rate table" the rate, when the policy was cancelled at twenty-seven and one-half months, would be eighty-six per cent of $19,182.97 which is $16,497.35. The assured had paid $14,653.65. So that, if clause "K" applied, there was still due plaintiff the difference between these last two amounts which is $1843.70.

"The Special Cancellation Privilege" provided that the earned premium, in the contingency mentioned therein, should be computed at the rate of $4.85 for each $100 of wages epended during the period insurance was in force. According to this rate, as the expenditure for the twenty-seven and one-half months was $318,557.77, the amount of premium yet due, after deducting $14,653.65 already paid, would be $198.45 instead of $1843.70.

It is true as appellant claims that if the contract contains clauses of doubtful, ambiguous or conflicting meanings they will be construed most strongly against the insurer. [Aetna Life Ins. Co. v. American Zinc etc. Co., 154 S. W. 827, 1. c. 829; Matthews v. Modern Woodmen of America, 236 Mo. 326.] But are the two provisions hereinabove quoted so ambiguous, doubtful, or conflicting as to require the application of this rule? Effect must be given, if possible, to all parts of the instrument. Different portions are not to be deemed conflicting if they can be harmonized and both upheld. If they apply to different situations

or circumstances, then each should be applied to the situation it was designed to meet and neither robbed of its force and effect.

The rate is to be determined under paragraph "K," if the policy is cancelled at any time by the assured and the latter is not going out of business. If, however, at the expiration of the first policy year, the assured decides not to carry public liability insurance and the policy is canceled, then the rate is to be figured under the other provision.

There was no showing that defendants decided not to carry public liability insurance, and the option to discontinue the policy at the end of the first year was not exercised at the time the special cancellation privilege required.

Although there was some evidence that one of the defendants—either the Consolidated Electric Light and Power Co. or the Standard Electric Light Co.—had ceased business because its franchise had expired, yet there was no showing when this occurred, whether before or after the expiration of the three years the policy had to run. If any of the companies went out of business, this was a matter peculiarly within the knowledge of the defendants, and should have been alleged and proved. [Kitchen v. Railway, 59 Mo. 514, l. c. 519; State ex rel. v. Schar, 50 Mo. 393; State v. Schott, 128 Mo. App. 622, l. c. 635.] However, the evidence showed that the other companies remained in existence and continued in business and were so at the time of the trial; that the Kansas City Electric Light Company furnished the reports of wages paid upon which the premiums were based, so that there was not a "retiring from business" on the part of the assured within the meaning of the policy.

On the cross-examination of one of plaintiff's witnesses defendant asked him if certain payments

were not made in 1909 and included in the question these words, "on the theory that we were paying you whatever we owed you at the time." Objection was made to the witness testifying as to the theory on which defendants made the payments, and this objection was sustained. It is now claimed that this was error because defendants had a right to prove payment. But the objection sustained was not to the witness testifying to any fact but only to his idea of what defendants' intent was in making payment. In addition to this, the witness had previously said he knew nothing about payments having been made, and after the objection was sustained defendants were allowed to ask the witness whether such payments were in fact made and he answered as before that he could not say.

In cross-examining another witness who testified that plaintiff made demand for the amount due in October, 1910, defendant asked him a question in reference to a receipt which the questioner evidently had before him but which was signed by other parties, and it was not disclosed whether it related to the transaction under consideration or not. Objection was made to the question unless the receipt referred to was shown to the witness so that he might see it and know what it was and to what it applied. The paper was not shown to the witness and the obection was sustained. The writing should have been shown to the witness being cross-examined. [1 Grenleaf on Ev., sec. 463; Prewitt v. Martin, Admx., 59 Mo. 325.] The witness was being cross-examined as to the demand he had made, and the court allowed this to be done fully. He testified that a demand was made for the balance. So far as the materiality of the date when demand was made is concerned, this became immaterial when the court allowed interest, not from date of demand, but from the date of the institution

of suit. This was a demand. [Trimble v. Kansas City Ry. Co., 180 Mo. 574.]

We are unable to see wherein any error was committed by the trial court. Consequently, the udgment is affirmed. All concur.