(No. 5772. May 25, 1932.)

MARYLAND CASUALTY COMPANY, Respondent, v. BOISE STREET CAR COMPANY, Appellant.

[11 Pac. (2d) 1090.]

Oppenheim & Lampert, for Appellant.

Martin & Martin, for Respondent.

VARIAN, J.—On June 5, 1929, and prior thereto, appellant, as a public utility, operated a fleet of eight passenger motor-busses within the corporate limits of the city of Boise and vicinity. On said date respondent issued to appellant a policy insuring appellant against liability for damages on account of accidental injury to persons, including death, and for damage or destruction of property, resulting from accident during the policy term in the operation of its said busses. The policy term is declared to be from 12:01 A. M. June 5, 1929, to 12:01 A. M. June 5, 1930. On January 1, 1930, appellant canceled the policy, proceeding according to paragraph "H" thereof, reading as follows:

"H. This Policy may be cancelled by the Company at any time by written notice sent by registered mail or de-

livered to the Assured stating when thereafter the cancellation shall be effective. It may be cancelled by the Assured by like notice. If cancelled by the Company, the Company shall be entitled to the earned premium, *pro rata*. If cancelled by the Assured, the Company shall be entitled to the earned premium calculated at short rates, in accordance with the printed table on the back of this Policy. The check of the Company or of its agent, sent by registered mail to the address of the Assured as given in the Statements hereof shall be sufficient tender of unearned premium when ascertained, but no tender shall be required if the premium shall not have been paid, or if the amount thereof shall not have been determined; and written notice of cancellation sent by registered mail to or delivered at such address shall be a sufficient notice of cancellation.''

Printed on the back of the policy was a table of short rates ''For One Year Policies.'' It is conceded by counsel that if the short rate applies to this case the premium for the 209 days the policy was in force would be 74.84 per cent of the premium for one year.

A rider, of even date with the policy and attached thereto, designated as ''Earnings Basis Endorsement,'' fixed the premium rate, based upon an estimated gross earning of $75,000 at $5.28 liability, and $.798 property damage; a total rate of $6.078 per each $100 of gross earnings. Said rider also contained the following:

''The Assured shall, upon delivery of the Policy, pay to the Company an advance premium computed by applying the earnings rate to each $100.00 of the total estimated earnings for the Policy term, or a deposit premium based thereon and calculated in accordance with the Company's rules for semi-annual, quarterly or monthly adjustment of premium. The Assured shall previous to the delivery of the Policy furnish the company a complete list of all public passenger carrying vehicles owned and/or used by the Assured and to be covered by this Policy.

''The actual earned premium for the Policy, except as hereinafter provided, shall be computed at the expiration

thereof on the basis of the total gross livery earnings (whether collected or not) developed by audit for all public passenger carrying vehicles (except metered taxicabs), owned and/or used by the Assured during any part of the Policy term. Provided, however, that the earned premium shall not be less than 75% of a total premium calculated on a specified car basis in accordance with the Company's Manual of Rules and Rates in force on the effective date hereof for all automobiles insured hereunder. If the premium when determined is greater than the advance premium the Assured shall immediately pay the difference to the Company; if less the Company shall return the unearned portion to the Assured. The minimum premium for the Policy in any event shall not be less than the specified car premium calculated in accordance with the Company's Manual of Rules and Rates in force on the effective date hereof, for the three highest rated automobiles owned and/or used by the Assured on the inception date of the Policy.

" . . . . The Company shall be permitted to examine the books and records of the Assured in so far as they relate to the use and operation of such automobiles and to the livery earnings derived therefrom. Such examination may be made at any time during the Policy term or within one year after its termination.

"Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the Policy, except as hereinabove set forth."

Another ".endorsement," or rider, likewise dated June 5, 1929, attached to the policy, reads:

"Date June 5, 1929.

"The Policy to which this Endorsement is attached is issued by the Company and is accepted by the named assured with the understanding and agreement that a premium of $759.75 ($660.00 liability and $99.75 Property Damage) known as the Deposit Premium, shall be paid upon the delivery of the Policy, and that a further payment of $379.87 ($330.00 Liability and $49.87 Property Dam-

age) shall be made on the first day of each month thereafter, until the full Policy premium shall have been paid.

"Subject otherwise to all the terms, limits and conditions of the Policy."

After some negotiations between the parties, an "endorsement" or rider, reducing the rate of premium, was executed and attached to the policy. It is in the following language, viz.:

"Date November 1, 1929.

"In consideration of an experience credit of 25% Liability and 30% Property Damage effective November 1, 1929, having been promulgated for this risk it is hereby understood and agreed that the installments after November 1, 1929, are Liability $298.12 and Property Damage $48.13 and the rate at which the premium for the policy will be adjusted is Liability $4.77 and Property Damage .77 per $100. instead of as originally written.

"Subject otherwise to all the terms, limits and conditions of the Policy."

The deposit and monthly payments, referred to in the riders, *supra,* were made by appellant in the total sum of $2,687.36, and this action was commenced by the Casualty Company to recover an alleged balance of premium claimed to be $825.01. By cross-complaint appellant alleged that there was an overpayment by it amounting to $218.23. At the close of plaintiff's evidence, the defendant moved for judgment of nonsuit which was denied. Defendant electing to stand upon its motion, the court made findings and entered judgment in favor of plaintiff for $729.80, from which defendant appeals.

The dispute arises over the differing interpretations placed upon the provisions of the policy by the parties and the assignments of error all strike at the rules applied by the court in determining the amount of premium due under the policy.

Appellant's motion for a nonsuit was based upon subdivision 5 of C. S., sec. 6830, as amended Sess. Laws 1931, chap. 13, p. 17, reading as follows:

"An action may be dismissed, or a judgment of nonsuit entered, in the following cases: . . . . 5. By the court, upon motion of the defendant, when, upon the trial, the plaintiff fails to prove a sufficient case to entitle him to verdict or judgment."

Then follows the general statement:

"The dismissal mentioned in the first two subdivisions is made by an entry in the clerk's register. Judgment may thereupon be entered accordingly. A dismissal under the fifth subdivision shall operate as a bar to another action upon the same cause of action."

The phrase, "Judgment may thereupon be entered accordingly," also appearing in the statute before amendment, has been held to apply to judgments of nonsuit and not to dismissals. (*Boyd v. Steele,* 6 Ida. 625, 634, 59 Pac. 21.)

The principal grounds stated in the motion for nonsuit are to the effect that under the evidence presented, the rates under which the premium was to be computed "were so indefinite and uncertain as to be incapable of accurate computation for the full year term of the policy"; that the short term provisions of the policy are void; that a correct interpretation of the policy, properly computed, shows an excess payment by defendant to plaintiff of $218.23; and that the evidence fails to show defendant is indebted to plaintiff in any sum. Other objections stated in, but not properly raised by, the motion relate to the interpretation to be placed upon the terms of the policy, and only tend to vary the amount of recovery. These objections, however, are before us by proper assignment of error, and will be considered.

A motion for nonsuit admits the truth of plaintiff's evidence and of every fact which it tends to prove, and he is entitled to the benefit of all inferences that can justifiably be drawn from the evidence. (*First Nat. Bank v. Stringfield,* 40 Ida. 587, 592, 235 Pac. 897, and cases cited therein; *Coulson v. Aberdeen-Springfield Canal Co.,* 39 Ida. 320, 323, 227 Pac. 29, and cases cited therein;

*Schleiff v. McDonald,* 37 Ida. 423, 428, 216 Pac. 1044; *Bank of Commerce v. Baldwin,* 12 Ida. 202, 211, 85 Pac. 497.)

 . This court has laid down the rules that if ''a clause in an insurance policy be susceptible of more than one construction, the one most favorable to the insured will be adopted''; and that ''Contracts of insurance should be considered in view of their general objects and the conditions prescribed by the insurers, rather than on the basis of a strict technical interpretation.'' (*Sweaney & Smith Co. v. St. Paul Ins. Co.,* 35 Ida. 303, 315, 206 Pac. 178; *Sant v. Continental Life Ins. Co.,* 49 Ida. 691, 696, 291 Pac. 1072.) And where the terms of the policy are unambiguous an insurance contract will be construed the same as any other contract. The construction in favor of the insured only applies in case of ambiguity. (*Maryland Casualty Co. v. State Industrial Acc. Com.,* 209 Cal. 394, 287 Pac. 468; 14 Cal. Jur. 446; *Aetna Life Ins. Co. v. American Zinc, Lead & Smelting Co.,* 169 Mo. App. 550, 154 S. W. 827, and cases therein cited.) A contract will be so construed as to give effect to the intention of the parties making it at the time of contracting. (*Messinger v. Cox,* 33 Ida. 363, 194 Pac. 473; *D. M. Ferry & Co. v. Smith,* 36 Ida. 67, 209 Pac. 1066; *D. M. Ferry & Co. v. Forquer,* 61 Mont. 336, 29 A. L. R. 642, 202 Pac. 193.)

 Appellant first contends that the method of computation used by the trial court for calculating the earned premium under the short rate table was erroneous. The court calculated the premium at the rate fixed by the indorsement of June 5, 1929, *supra,* to November 1, 1929, based upon the gross earnings for that period as shown by audit; at the lesser rate, for the second period beginning November 1, 1929, and ending December 31, 1929, established by the indorsement of November, 1, 1929, also based upon the actual gross receipts for said period as shown by audit; and at said lower rate for the remaining 156 days to the end of the policy term, based upon the gross receipts for said period estimated by taking a daily average of receipts for the first 209 days and multiplying it by 156.

Adding these several sums he obtained the estimated premium under the "Earnings Basis Endorsement" rider of June 5, 1929. In order then to arrive at the earned premium he took 74.84 per cent (agreed to be the correct percentage under the short rate table of the policy) of said total sum. We think the court correct in all but one particular in his interpretation of the policy provisions. The rider, or indorsement of November 1, 1929, expressly provides that "the rate at which the premium for the policy will be adjusted is Liability $4.77 and Property Damage .77 per $100. instead of as originally written. Subject otherwise to all the terms, limits and conditions of the Policy." The language of this rider clearly indicates that the earned premium should be adjusted upon the basis of the rate therein mentioned, and not as stated in the "Earnings Basis Endorsement" of June 5, 1929. The court therefore erred in computing the first period at the higher rate.

■ ■ Appellant argues that because an audit was not made at the end of the policy term, as stated in the policy (June 5, 1930), and the actual gross earnings for one year were not available at the date of cancelation, the earned premium could not therefore be computed at short rates. Paragraph "H" of the policy, *supra,* provides for the cancelation of the policy. If by the assured, the Casualty "Company shall be entitled to the earned premium calculated at short rates." The "Earnings Basis Endorsement" provides that the actual earned premium shall be computed at the expiration of the policy, on the basis of gross livery earnings (whether collected or not) developed by audit, and that if "the premium when determined is greater than the advance premium" (that is, the total monthly premiums, plus the deposit premium of $759.75 paid on delivery of the policy), "the assured shall immediately pay the difference to the Company," if less, the company will return the unearned portion (of the advance premium) to the assured. The conclusion is inescapable that it was the intention of the policy that, upon its termination by cancelation by the insured, the actual earned premium should then be calcu-

lated at short rates, and the difference between the amount so found and that already paid in advance should be immediately paid to the assured, if in its favor, or to the insurer if the balance was in its favor. Since the policy was terminated before the end of the policy year it is manifest that it had expired and that no basis for the ascertainment of the gross earnings for a year could be determined from the actual gross earnings for a year which had not then elapsed. Practically the only method by which the actual earnings for a year could be approximated was to divide the amount of the actual gross earnings, developed by audit, for the number of days the policy was in force, by such number (209), thereby obtaining the average daily gross receipts for said period (209 days), and multiplying the result by 365. This procedure seems to have been recognized by the courts in the interpretation of analogous contracts involving premiums based upon annual pay-rolls, although the reports do not always definitely disclose the policy provisions upon which some of these decisions are based. (*Big Run Coal Co. v. Employers' Indemnity Co.*, 163 Ky. 596, 174 S. W. 25; *Bituminous Casualty Corp. v. Marion County Coal Co.*, 258 Ill. App. 6; *Joseph Weaver & Son v. Home Life & Accident Co.*, (Tex. Civ. App.) 221 S. W. 299; *Commercial Casualty Co. v. Rice*, 93 Misc. Rep. 567, 157 N. Y. Supp. 1.)

Policy stipulations for the application of short rate provisions in case of cancellation by the assured have been upheld by the courts. They not only apply to cases where the amount of the premium is fixed at a definite rate in the policy (32 C. J. 1262; *In re Independence Ins. Co.*, 13 Fed. Cas. 12, No. 7015; *Burlington Ins. Co. v. McLeod*, 34 Kan. 189, 8 Pac. 124; *Continental Ins. Co. v. Phipps*, (Mo. App.) 190 S. W. 994; *Home Ins. Co. v. Partney*, (Mo. App.) 252 S. W. 90), but also to cases where the computation of premiums is based upon the pay-roll for a definite period. (36 C. J. 1066; *Big Run Coal Co. v. Employers' Indemnity Co.*, supra; *Bituminous Casualty Corp. v. Marion County Coal Co.*, supra; *Aetna Life Ins. Co. v. American Zinc, Lead & Smelting Co.*, supra; *Aetna Life Ins. Co. v. Kansas City*

*Electric Light Co.*, 184 Mo. App. 718, 171 S. W. 580; *Joseph Weaver & Son v. Home Life & Accident Co., supra.*)

■ The "Earnings Basis Endorsement" "provided" further "that the earned premium shall not be less than 75% of the total premium calculated on a specified car basis" in accordance with the company's manual of rates, etc., and that "The minimum premium for the Policy in any event shall not be less than the specified car Premium . . . . for the three highest rated automobiles owned and/or used by the Assured on the inception date of the Policy." Clearly these provisos are for the benefit of the insurer and it may waive or disregard them. If either of said minimum premiums is greater than the earned premium calculated under the terms of the policy, respondent has waived the right to recover on that theory by its failure to plead the same, and if either minimum premium is less than the amount of the calculated earned premium these provisos would not apply. Appellant cannot be injured by the course pursued here in either event.

■ Nor did the rider of November 1, 1929, constitute a waiver of the short rate provision contained in paragraph "H" of the policy. The rider expressly fixes a new rate to be charged instead of the rate fixed in the policy as originally written, and provides for its adjustment upon that rate; nothing more. It makes these changes "Subject otherwise to all the terms, limits and conditions of the Policy." (*Aetna Life Ins. Co. v. American Zinc, Lead & Smelting Co., supra; Joseph Weaver & Son v. Home Life & Accident Co., supra; Ocean Accident & Guaranty Corp. v. Combined Locks Paper Co.*, 162 Wis. 255, 156 N. W. 156.)

■ Appellant further urges that the short rate is not applicable because the dealings between the parties extended over a term longer than a year. The testimony shows that respondent issued a policy, the year previous, to appellant, but there is no reference in the instant policy to the former contract. The policy term is definitely limited in the policy under consideration, which appears upon its face to be a separate, distinct and independent contract. (See *Kentucky*

*Vermillion M. & C. Co. v. Norwich U. F. Ins. Soc.,* 146 Fed. 695; *Long Bros. Groc. Co. v. United States Fidelity & Guaranty Co.,* 130 Mo. App. 421, 110 S. W. 29; *Hartford Fire Ins. Co. v. Walsh,* 54 Ill. 164, 5 Am. Rep. 115; *Brady v. Northwestern Ins. Co.,* 11 Mich. 425; *American Ins. Co. v. Woolfolk,* (Ind. App.) 42 A. L. R. 834, 169 N. E. 342.)

Appellant urges that respondent has already received adequate compensation by the payment, already made by it, of the deposit premium and the monthly estimated premium, aggregating $2,687.36. We are concerned here with the interpretation of the policy provisions, which are deemed sufficient to sustain the general theory followed by the trial court in fixing the amount of premium, and we think the evidence is insufficient to justify the court in calculating the premium by any other method. The provisions of the policy are not ambiguous, and considering them in view of their general objects and prescribed conditions are sufficient to sustain the method adopted by the court in computing the earned premium at short rates for the 209 days the policy was in force. The motion for a nonsuit was properly denied.

 Having concluded that the only error made by the trial judge, in computing the earned premium for a year, was that he computed it for the first period at the rate first stated in the policy instead of employing the lower rate fixed by the rider of November 1, 1929, for the full period, it is not considered necessary to send the cause back for a new trial.

The matter being susceptible of mere mathematical computation (C. S., sec. 6446; see *Price v. Pace,* 50 Ida. 353, 360, 296 Pac. 189; *Taylor v. Peterson,* 1 Ida. 513), we have computed the rate on the basis of gross earnings for one year at $79,340.05 as found by the court, at $5.54 per $100, making the earned premium for the policy, if continued for a year, $4,395.43. Computed at the short rate (74.84 per cent of this sum) the earned premium for 209 days amounts to $3,288.57. Deducting the amount theretofore paid on the premium ($2,687.36) about which there is no dispute, leaves a balance due from appellant of $602.19.

The findings and judgment are accordingly modified to conform hereto, and the trial judge is directed to enter judgment in favor of respondent for $602.19. As so modified the judgment is affirmed. Each party to pay its own costs.

Lee, C. J., and Budge, Givens and Leeper, JJ., concur.